YAM'S, INC. *v.* Shirley MOORE

94-549                                                    890 S.W.2d 246

Supreme Court of Arkansas
Opinion delivered December 19, 1994

*Hardin, Jesson, Dawson & Terry*, by: *J. Rodney Mills*, for appellant.

*Ogles Law Firm*, by: *Michael Knollmeyer* and *John Ogles*, for appellee.

DAVID NEWBERN, Justice. This is a malicious prosecution case. The appellee, Shirley Moore, was awarded compensatory damages of $20,000 and punitive damages of $10,000 against the appellant, Yam's, Incorporated (Yam's). Ms. Moore alleged that Yam's maliciously prosecuted her for stealing a washer and dryer she rented from Yam's and later reported stolen from her by a third party. Yam's contends Ms. Moore's evidence was insufficient to go to the jury. It also contends there were errors requiring the granting of its motion for a new trial and remittitur. We agree there was error requiring the granting of a new trial, and we reverse and remand for that purpose. As we are reversing the decision, we need not address Yam's third point having to do with remittitur.

The evidence was that in January, 1988, Ms. Moore rented a washer and a dryer from Yam's. She paid the weekly rental payments for about three-and-one-half months before the appli-

ances were, according to her, stolen from her home. There was some evidence that the machines were taken by Ms. Moore's estranged husband. She testified that on the night that she discovered that the washer and dryer had been stolen, she filed a police report and called Yam's to say what had happened. In addition, she claimed that a representative from the store came to her house approximately two nights later to collect the police report.

Within a few days of the theft, Ms. Moore said she had a telephone conversation with the manager of the Yam's store from which she rented the appliances. She testified she was told she still had to make payments, but when she offered to file a claim against her homeowner's insurance, the manager told her Yam's would make its own insurance claim. After that conversation, Ms. Moore had no further communication with Yam's and assumed the matter was settled, she said.

In 1988, Bradley Croft was an assistant manager at Yam's. His duties included taking sales calls, processing applications, making deliveries, and collecting. On August 1, 1988, he went to the Prosecuting Attorney's Office where he signed an affidavit as follows:

> I, Brad Croft, am assistant manager at Yam's which rents personal property. On 1/11/88 Moore rented a washer and dryer. The minimum rental period is 30 days. Moore fulfilled her 30 day obligation and continued to make payments until 4/18/88. These items are worth over $700.00. On 4/26/88, Moore notified Yam's that she couldn't produce the property. Alternative arrangements could not be made with Moore. On 5/28/88 Notice by a written demand was made to Moore by certified mail to the address given by her in the original agreement.

Although he did not dispute having signed the affidavit, Mr. Croft testified he did not remember most of the details of the case or his visit to the prosecutor. In particular, he could not remember whether he sent Ms. Moore a demand letter, as stated in the affidavit. Yam's practice was to send such a letter by certified mail, but he could not produce any receipt because the Yam's files had been "bled" of out of date material. He concluded, however, that such a letter must have been sent as it is apparent from the affidavit that he had the supporting documen-

tation with him during his visit to the prosecutor. Ms. Moore testified that, although she has been at the same address since she rented the washer and dryer, she did not receive the letter.

The deputy prosecutor who received Mr. Croft's complaint, Jay Bequette, testified he filled out the affidavit, and that Mr. Croft signed it under oath. Mr. Bequette also testified he would not have written the affidavit if the supporting documentation had not been presented to him. After the affidavit was signed, it was sent to Municipal Court, where a judge found probable cause to issue a warrant for Ms. Moore's arrest on a charge of theft of rented property, a class C felony.

No further action was taken against Ms. Moore until 1992, when she was stopped by the police for a traffic violation and the outstanding warrant for her arrest for theft was discovered. Because of the felony warrant, Ms. Moore was taken to the police station where she was fingerprinted, photographed, and put in jail from the early afternoon until after 9:00 p.m. when she was able to reach a bondsman.

Before Ms. Moore's trial on the criminal charges began, she moved for a dismissal because the prosecution failed to present a prosecuting witness. Accordingly, the case was dismissed.

### 1. Sufficiency of the evidence

We decline to address this point because neither the motion for directed verdict made at the end of Ms. Moore's case nor the one made at the end of the case specifically stated the ground for the motion. That is required. Ark. R. Civ. P. 50(a); *Security Pacific Housing Services, Inc.* v. *Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993). Arkansas R. Civ. P. 50(b) provides that a motion for a directed verdict is a condition precedent to a motion for a judgment notwithstanding the verdict. We note that Yam's motion for judgment notwithstanding the verdict was also unspecific.

The Trial Court interrupted Yam's counsel when he made his initial motion and was very quick to deny the second one and the motion for judgment notwithstanding the verdict. Nevertheless, counsel should have asked to put the grounds for those motions on the record. Because counsel for Yam's failed to do so, we decline to address them now.

Before leaving this point, it should be mentioned that in its reply brief Yam's asks us to review the sufficiency of the evidence because the verdict was against the preponderance of the evidence, a matter which is not waived by failure to move for a new trial on that ground. Ark. R. Civ. P. 59(f). As that argument was not raised in Yam's opening brief, we decline to address it. *John Cheeseman Trucking, Inc.* v. *Dougan*, 313 Ark. 229, 853 S.W.2d 278 (1993).

## 2. New trial motion

Yam's moved for a new trial on the following bases: (1) the Trial Court's refusal to allow Yam's to cross-examine Ms. Moore concerning the terms and conditions of the lease agreement, (2) the Trial Court's submission of an improper instruction to the jury, and (3) the submission of an instruction to the jury concerning punitive damages.

### a. Cross examination

Ms. Moore introduced the lease instrument into evidence. Counsel for Yam's sought to cross examine her as to what the lease revealed about responsibility for the rented machinery in the event of theft. Ms. Moore's counsel objected on the ground of relevancy, and the Trial Court agreed, thus preventing Yam's counsel from asking her whether she understood her obligation under the lease regardless of the theft.

We have little doubt that the terms of the lease and Ms. Moore's obligation under it were relevant to the issue of whether Yam's was malicious in filing its affidavit with the prosecutor. It also was directly relevant to impeach her testimony that someone from Yam's told her a claim would be made against Yam's insurance. The lease provided specifically that Yam's did not insure the appliances, and that it was the lessee's responsibility to assume the risk of loss and obtain insurance.

While we conclude the cross examination should have been allowed, we need not go so far as to reverse on this point as we hold a new trial should have been granted on the next point to be discussed. We have discussed the issue solely for guidance in the event the issue arises upon retrial.

### b. Mental anguish instruction

The jury was instructed on the matter of damages as follows:

> If you decide for Shirley Moore on the question of liability against Yam's, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damage sustained which you find were proximately caused by the conduct of Yam's:
>
> First, harm to her reputation resulting from the accusation;
>
> Second, humiliation;
>
> Third, any mental anguish experienced in the past;
>
> Fourth, the loss of freedom due to arrest; and
>
> Fifth, the expense that she has reasonably incurred in defending herself on the criminal charges.
>
> Whether any of these five elements of damage have been proved by the evidence is for you to determine.

Ms. Moore apparently presented that instruction to the Trial Court after copying it verbatim from the transcript of *First Commercial Bank* v. *Kremer*, 292 Ark. 82, 728 S.W.2d 172 (1987). Yam's objected and submitted an instruction based on AMI 2201 which would have allowed recovery for Ms. Moore's expenditures and for mental anguish.

The instruction given was not at issue in our decision in the *First Commercial Bank* case. Indeed had it been, we would have disapproved it because it stated "humiliation" as a element for which damages could be awarded separately from "mental anguish." In *Bruns* v. *Bruns*, 290 Ark. 347, 719 S.W.2d 691 (1986), an instruction was given, much like the one above, in which "embarrassment" and "mental anguish" were listed as separate damages elements. We reversed and said that, while embarrassment could have been argued to the jury as contributing to the plaintiff's mental anguish, the "jury could not be

instructed that embarrassment and mental anguish were separate elements to be weighed in determining her compensation." The same rule applies here.

### c. Punitive damages instruction

Yam's argument here is nothing more than a repetition of the sufficiency of the evidence argument we have dealt with above. The point is that the evidence was insufficient to go the jury on punitive damages and thus there should have been no instruction on punitive damages. No argument is made that the instruction was in any other way improper. We need not address the point further than to say again that it was waived by the failure to be specific in the motions for directed verdict and judgment notwithstanding the verdict.

Finally, we deny Ms. Moore's motion for costs expended in preparing a supplemental abstract, much of which we deem to have been unnecessary.

Reversed and remanded.