Diana KELLERMAN and Linda Spencer *v.* Marianne ZENO

CA 98-293 · 983 S.W.2d 136

Court of Appeals of Arkansas
Division III
Opinion delivered November 11, 1998

*Davis, Cox & Wright,* by: *Constance G. Clark* and *Don A. Taylor,* for appellants.

*Wilson, Engstrom, Corum, & Coulter,* by: *Gary D. Corum* and *Nate Coulter,* for appellee.

JOHN F. STROUD, JR., Judge. This case involves a malicious prosecution action filed by appellee against appellants. The jury found in appellee's favor and awarded her $30,000 compensatory damages and $58,000 punitive damages. Appellants assert three points of error on appeal: (1) the jury's conclusion that there was no probable cause for the criminal prosecution of appellee is not supported by substantial evidence; (2) the trial court erred in excluding the deposition testimony of prosecutor Paul Eaton; and (3) the trial court erred in rejecting their proffered instructions on comparative fault. We find no error and affirm.

During the times relevant to this case, appellant Dana Kellerman and her husband Barry were owners of a furniture store in the city of Maumelle. Appellant Linda Spencer was the store manager. In April 1995, appellee was hired to work at the store. Her tenure there was brief, lasting only about four months. On

August 16, 1995, she quit her job for reasons unrelated to this case. During the time of her employment, appellee acquired certain items from the store's inventory and suppliers and took the items home to be used for her own purposes. The merchandise, having a total value of $1,283.40, consisted of fabric, border, wallpaper, a wall hanging, and bedroom furniture, including a mattress set. According to appellee, appellant Spencer approved an arrangement whereby appellee would make payments on the items between July and September, then pay the balance due at the end of September when her husband received his year-end bonus. By August 2, appellee had made two payments totaling $175.

Shortly after appellee relinquished her job, appellant Kellerman and her husband became concerned that appellee had taken the merchandise from the store without paying for it in full. According to the Kellermans, the store had a strict no-credit policy. After seeking the advice of their personal attorney, the Kellermans contacted the Maumelle Department of Public Safety. As a result, Sergeant Mike Wilson prepared an incident report that referenced the crime of theft of property and cited appellee as a suspect. The report contained a list of the merchandise that appellee had acquired from the store. Shortly thereafter, the Kellermans made contact with deputy prosecuting attorney David Clark. After Clark spoke with the Kellermans in person and with appellant Spencer by phone, he drafted the following affidavit, purportedly consisting of facts constituting reasonable cause to arrest appellee for theft of property:

> On or about 6-10-95 Ms. Zeno filled out a purchase order for Marsha Rawls and had the order approved by Linda Spencer. This order was altered to include an additional 6 Drawer Dresser and mirror. Ms. Rawls cancelled her order.
>
> Ms. Zeno then removed from the store one 6 Drawer Dresser, one mirror, one headboard and a lamp. All of these items had been ordered on the ticket for Ms. Rawls. Store employees must pay in full for any items they take. Ms. Zeno did not pay for these items in full. These items have a retail value of $568. Ms. Zeno paid $175 prior to her termination but kept the payments hidden from the accountant.

> After Ms. Zeno's termination a mattress and a picture could not be accounted for in inventory. Ms. Zeno admitted to Linda Spencer to having these items. Additionally, some wallpaper and fabric was listed by Ms. Zeno as being used for store display but when Ms. Spencer contacted Ms. Zeno about these items, Ms. Zeno stated that they were hers.

Appellants would later admit that the affidavit contained numerous inaccuracies, particularly the statements that Ms. Rawls had canceled her order, that appellee hid her payments from the accountant, and that a mattress and a picture could not be accounted for in the store's inventory. Nevertheless, appellants signed the affidavit.

On September 22, 1995, appellee was arrested in her home, transported to the police station, interrogated, and booked for theft of property. She spent approximately one hour in a small room until she bonded out. Her husband arrived at the store several days later to pay the balance owed on the merchandise. On November 28, 1995, appellee was brought to trial and was acquitted by directed verdict at the close of the State's case. On January 18, 1996, she filed suit against appellants for malicious prosecution. After a trial, the jury unanimously found in her favor and awarded damages as we have previously mentioned. It is from that verdict that appellants bring their appeal.

Appellants first challenge the sufficiency of the evidence to support the verdict against them. When reviewing the sufficiency of the evidence, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Balentine v. Sparkman*, 327 Ark. 180, 937 S.W.2d 647 (1997). The jury's verdict will be affirmed if there is substantial evidence to support it. *Id.* Substantial evidence is evidence that passes beyond mere suspicion or conjecture and is of sufficient force and character that it will with reasonable and material certainty compel a conclusion one way or the other. *Burns v. Boot Scooters, Inc.*, 61 Ark. App. 124, 965 S.W.2d 798 (1998). To prove the tort of malicious prosecution, the plaintiff must establish each of the following elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the

plaintiff; (3) absence of probable cause for the proceedings; (4) malice on the part of the defendant; and (5) damages. *McLaughlin v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996).

■ The element we are concerned with in this case is the "probable cause" element. Probable cause must be based upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused to be guilty. *Hollingsworth v. First Nat'l Bank & Trust Co.*, 311 Ark. 637, 846 S.W.2d 176 (1993); *Parker v. Brush*, 276 Ark. 437, 637 S.W.2d 539 (1982). Probable cause is to be determined by the facts and circumstances surrounding the commencement and continuation of the legal action. *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). On disputed facts, the question of probable cause is for the jury to determine. *Crockett Motor Sales, Inc. v. London*, 283 Ark. 106, 671 S.W.2d 187 (1984). Further, ordinary caution is a standard of reasonableness that presents an issue for the jury when the proof is in dispute or subject to different interpretations. *Cordes v. Outdoor Living Ctr., Inc., supra; Parker v. Brush, supra.*

■ The thrust of appellants' argument is that probable cause conclusively existed in this case because they acted on the advice of the Kellermans' attorney, Greg Stephens, and prosecutor David Clark. Acting upon the advice of counsel is a defense to a charge of malicious prosecution. *Machen Ford-Lincoln Mercury, Inc. v. Michaelis*, 284 Ark. 255, 681 S.W.2d 326 (1984). However, to avail themselves of the defense, defendants must have made a full, fair, and truthful disclosure of all facts known to them and act *bona fide* on counsel's advice. *McLaughlin v. Cox, supra; Culpepper v. Smith*, 302 Ark. 558, 792 S.W.2d 293 (1990). *See also Jennings Motors v. Burchfield*, 182 Ark. 1047, 34 S.W.2d 455 (1931). The defendants have the burden of proving this defense. *Eggleston v. Ellis*, 291 Ark. 317, 724 S.W.2d 462 (1987).

The jury in this case was instructed on the advice-of-counsel defense. According to appellee, the jury might well have found that appellants did not fully disclose to counsel all facts known to them, in particular the existence of an agreement between appellee and appellant Spencer to allow purchase of the items on an

installment plan. We agree. Attorney Greg Stephens testified that he had counseled the Kellermans that if someone took merchandise from the store without permission, a crime had been committed. However, he also told them that if they extended credit to someone who did not pay or if someone removed merchandise from the store with authorization, no theft of property had occurred. David Clark testified that, based upon the information he obtained from the police report and his discussion with appellants, he believed that probable cause existed for appellee's arrest. However, he said that if appellant Spencer had told him that she knew of appellee's purchases and approved the installment plan, it would change his assessment of the existence of probable cause.

Appellants argue that they did not inform counsel of an agreement between appellee and appellant Spencer because no such agreement existed. However, the evidence on this point is in conflict. While Linda Spencer testified that no installment plan had been arranged for appellee, appellee testified that such a plan existed. Sarah Williams, who worked in a business located in the same building as the furniture store, testified that appellee had openly discussed in Spencer's presence her purchase of the bedroom furniture and the wallpaper. Williams also testified that despite appellants' assertion of a strict no-credit policy, she had been allowed to purchase items on credit with appellants' approval. Further, appellee introduced an invoice prepared by Spencer listing the bedroom furniture and showing $75 "paid on account."

Where testimony is in sharp conflict, it is the province of the jury to resolve such conflict. *McWilliams v. Zedlitz*, 294 Ark. 336, 742 S.W.2d 929 (1988). In particular, where the evidence conflicts as to what a defendant told his attorney in a malicious prosecution action, a jury question is presented on the advice-of-counsel defense. *Eggleston v. Ellis, supra.* Viewing the testimony in the light most favorable to appellee, there is substantial evidence that an installment plan was authorized. If there was substantial evidence of such authorization, it follows that there was substantial evidence of appellants' failure to make a full and complete disclosure of facts to counsel. A jury may reject the advice-of-counsel defense if there is substantial evidence that the defendants either did not impartially state all the facts to counsel or did

not honestly and in good faith act upon the advice given them. *Parker v. Brush, supra.*

■ We also note that the jury had evidence before it that appellants signed an affidavit containing false and misleading information. Appellants claim that they should not be held responsible for the contents of the affidavit because it was prepared by David Clark. Although Clark conceded that he could have made an error on the affidavit, he also testified that, to the best of his memory, the affidavit contained the facts as relayed to him. Appellants further claim that, at the behest of a police officer, they signed the affidavit *after* appellee's arrest, despite trying to tell the officer that the affidavit contained inaccuracies. Appellants' testimony on this point is disputed. The affidavit itself was dated September 19, 1995, three days prior to appellee's arrest. Don Belew, the arresting officer, testified that at the time he arrested appellee, the affidavit had been signed. Further, Sarah Williams testified that at some point before appellee's arrest, appellants came into the store and said they were going to have appellee arrested. According to Williams, appellant Spencer was mad at appellant Kellerman because the allegations in the affidavit were not true. Based upon the foregoing, and viewing the evidence in the light most favorable to the appellee, we hold that the jury's verdict is supported by substantial evidence.

The next issue is whether the trial court erred in excluding the proffered testimony of prosecuting attorney Paul Eaton. In late October 1995, Eaton became the prosecutor on appellee's criminal case in place of David Clark. Appellants sought to introduce Eaton's deposition testimony[1] during the trial of this matter. Eaton testified that he made the decision to go forward with the case based upon his discussions with appellants shortly before trial, although he could not recall what was said during the discussions. He also said that, to his knowledge, appellants made a full and fair disclosure of all facts and that, in light of his discussions with appellants, the affidavit played no significant part in his decision to

---

[1] Eaton was out of the country and unavailable for live testimony.

prosecute. Eaton displayed no knowledge of any agreement between appellant Spencer and appellee. On cross-examination, he acknowledged that a party's consent to removal of property would be relevant in determining whether to prosecute a case.

Appellee objected to Eaton's testimony as irrelevant because it dealt with matters that occurred after the initiation of the prosecution. She also objected to Eaton's testimony as cumulative to other evidence, particularly the testimony of David Clark, Greg Stephens, and Sergeant Mike Wilson, regarding their opinions on the existence of probable cause. The trial judge sustained appellee's objection, stating that the testimony was cumulative and only concerned events occurring after appellee's arrest.

Relevant evidence may be excluded if its probative value is substantially outweighed by needless presentation of cumulative evidence. Ark. R. Evid. 403. The admission or rejection of evidence under Rule 403 is left to the sound discretion of the trial court. *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997). On appeal, the trial court's ruling will not be reversed absent a manifest abuse of discretion. *Id.*

Appellants contend that Eaton's testimony would have allowed them to pull their case together in a coherent form by presenting the testimony of the attorney who actually prosecuted appellee. They rely on our recent decision in *Potter v. Magee*, 61 Ark. App. 112, 964 S.W.2d 412 (1998). *Potter* involved a fee agreement between a lawyer and a client. The lawyer testified about the agreement during the client's case-in-chief. However, when the lawyer attempted to testify about the agreement during his own case, the trial judge rejected the testimony as being cumulative. We reversed and held that the lawyer's testimony during the client's case-in-chief was "sketchy at best" and that the exclusion of the testimony deprived him of the ability to present "the essence of his case."

We do not see the same detriment to appellants' case here. Eaton's testimony, while possibly relevant, added nothing of substance to the testimony already offered by previous witnesses.

We cannot say that a manifest abuse of discretion occurred or that appellants' substantial rights were affected by the exclusion of this evidence. *See* Ark. R. Evid. 103(a).

The final issue concerns appellants' attempt to have the jury instructed on comparative fault. Appellants argue that appellee's conduct in failing to follow proper bookkeeping procedures and in falsely assuring appellant Spencer she would make payment within "a few days" should be compared with their own conduct in assessing fault. The trial court rejected appellants' comparative-fault instructions, apparently on the basis that such instructions are not proper in the case of an intentional tort.

Arkansas's comparative-fault statute provides in pertinent part:

> (a) In all actions for damages for personal injuries or wrongful death or injury to property in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages.
>
> . . .
>
> (c) The word "fault" as used in this section includes any act, omission, conduct, risk assumed, breach of warranty, or breach of any legal duty which is a proximate cause of any damages sustained by any party.

Ark. Code Ann. § 16-64-122 (Supp. 1997).

Appellants contend that, under the broad definition of fault contained in our statute, a comparative-fault instruction may be used in a malicious prosecution case. They cite the comment to AMI 306, which reads: "Comparative fault may apply in cases involving intentional torts." They acknowledge, however, that our supreme court disagreed with that comment in *Whitlock v. Smith*, 297 Ark. 399, 762 S.W.2d 782 (1989). *Whitlock* involved the tort of battery. The defendant contended at trial that he struck the plaintiff in self-defense and asked the trial court to instruct the jury on comparative fault. The trial court refused, and the refusal was upheld on appeal. The supreme court stated:

"This was a battery case, pure and simple, not a negligence case, and the judge correctly refused to give the instruction on comparative fault." *Whitlock v. Smith*, 297 Ark. at 402, 762 S.W.2d at 783. *Whitlock* has been cited by two noted commentators as holding that comparative negligence is not applicable in an intentional tort case. *See* Henry Woods and Beth Deere, *Comparative Fault* § 7:1 at 151 (3d ed. 1996).

Recognizing the difficult hurdle they face in the *Whitlock* case, appellants attempt to argue that malicious prosecution is not an intentional tort. It is true that the elements of the tort do not mention intentional conduct. However, the state of mind of malice is required. Malice is any improper or sinister motive for instituting a lawsuit. *Cordes v. Outdoor Living Ctr., supra.* Our research reveals that other jurisdictions recognize malicious prosecution as an intentional tort. *See Rodick v. City of Schenectady*, 1 F.3d 1341 (2d Cir. 1993); *Allstate Ins. Co. v. Moulton*, 464 So.2d 507 (Miss. 1985); *Koury v. Straight*, 948 S.W.2d 639 (Mo. App. 1997); *Bittner v. Cummings*, 188 A.D.2d 504, 591 N.Y.S.2d 429 (1992); *Closs v. Goose Creek Consol. Indep. Sch. Dist.*, 874 S.W.2d 859 (Tex. App. 1994). Based upon our supreme court's holding in *Whitlock v. Smith*, we find no error in the trial court's rejection of appellants' proffered comparative-fault instructions.

Affirmed.

ROBBINS, C.J., and MEADS, J., agree.