

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II, and III
**No.** CV–14–603

| | |
|---|---|
| FAMILY DOLLAR TRUCKING, INC.; FAMILY DOLLAR, INC.; AND FAMILY DOLLAR SERVICES, INC. <br> APPELLANTS <br><br> V. <br><br> JIMMY HUFF and ROBERT WARD <br> APPELLEES | **Opinion Delivered** October 21, 2015 <br><br> APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. CV-2009-281] <br><br> HONORABLE VICTOR L. HILL, JUDGE <br><br> AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

## BART F. VIRDEN, Judge

Family Dollar Trucking, Inc.; Family Dollar, Inc.; and Family Dollar Services, Inc. (collectively, Family Dollar) bring this appeal from a judgment entered by the Crittenden County Circuit Court on a jury's verdict awarding Jimmy Ward and Robert Huff a total of $3.25 million on their causes of action for malicious prosecution and outrage after they had been accused of theft and fired from their jobs with Family Dollar. Family Dollar argues that Huff and Ward failed to present sufficient evidence to support their causes of action and that the damages awards were excessive and not supported by the evidence. We hold that there was sufficient evidence to support the malicious-prosecution claims and that the damages awards were not excessive; however, we find the evidence insufficient to support the outrage claim. Accordingly, we affirm in part and reverse and dismiss in part.

Huff and Ward were mechanics in Family Dollar's West Memphis Distribution Center.

They were supervised by Dennis Stripling. In part, their duties were to conduct integrity inspections and to remove from service any trailers that were deemed not "road worthy" after the trailers failed the inspections.

According to Huff, starting in 2005 and ending sometime in 2006, he and Ward were given permission by Stripling to purchase and re-sell the trailers that had failed inspection. Stripling informed Family Dollar's corporate fleet-maintenance manager, Bennie Stinson, who approved the sales. When Huff or Ward would sell a trailer, they would give Stripling the amount he said was the price and they would keep the balance. Stripling was supposed to forward the proceeds to Family Dollar. Family Dollar denies that it ever authorized the sales.

When Family Dollar learned of the sales, it began an investigation. Huff and Ward, among others, were terminated from their employment. Family Dollar's investigative reports were given to the West Memphis Police Department, which then conducted its own investigation. At the request of the police, the investigator for Family Dollar signed the affidavits for arrest warrants for Huff, Ward, and Stripling. Charges were filed. Huff and Ward agreed to testify against Stripling. Stripling subsequently pled guilty to a Class A misdemeanor and made restitution. The prosecutor then nolle prossed the charges against appellees.

In April 2009, Huff and Ward filed suit against Family Dollar for malicious prosecution and outrage, contending Family Dollar prosecuted them when Family Dollar knew they were innocent, causing them to suffer mental anguish, humiliation, and emotional distress. They sought both compensatory and punitive damages. Family Dollar answered and counterclaimed for conversion of the trailers.

2

SLIP OPINION

The case proceeded to a jury trial over four days in early February 2014. At the conclusion of Huff and Ward's case and again at the close of all the evidence, Family Dollar moved for directed verdicts on both causes of action, which the court denied. The jury returned verdicts of $1.75 million for Huff and $1 million for Ward on their malicious-prosecution claims. The jury also awarded Huff and Ward $250,000 each on their outrage claims. It found for Family Dollar on the claims for punitive damages. The jury found for Huff and Ward on Family Dollar's counterclaim for conversion of the trailers. Judgment was entered on the jury's verdict. After the circuit court denied Family Dollar's motions for new trial, judgment notwithstanding the verdict (JNOV), and remittitur, this appeal followed. The court also stayed the judgment pending this appeal.

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Crawford Cnty. v. Jones*, 365 Ark. 585, 232 S.W.3d 433 (2006). Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. *Id*. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id*. It is not our place to try issues of fact; rather, we simply review the record for substantial evidence to support the jury's verdict. *Id*. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id*. A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is

such that fair-minded people might reach different conclusions. *See McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007) (citing *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991)). The circuit court found, and we affirm that such was the case here.

Family Dollar first challenges the jury's verdicts on the malicious-prosecution claims. Our supreme court recently set forth the elements of a cause of action for malicious prosecution as follows:

> In order to establish a claim for malicious prosecution, a plaintiff must prove the following five elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. Malice can be inferred from lack of probable cause. Malice has been defined as any improper or sinister motive for instituting the suit. Probable cause for prosecution must be based upon the existence of facts or credible information that would induce the person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged. Ordinary caution is a standard of reasonableness, which presents an issue for the jury when the proof is in dispute or subject to different interpretations.

*McMullen v. McHughes Law Firm*, 2015 Ark. 15, at 15–16, 454 S.W.3d 200, 210 (internal citations omitted).

The thrust of Family Dollar's argument is that probable cause conclusively existed because Tonya Alexander, sitting as a special judge, issued arrest warrants for Huff and Ward, and that it acted on the advice of the deputy prosecuting attorney, Lindsey Fairley.[1] Acting upon the advice of counsel is a defense to a charge of malicious prosecution. *Kellerman v.*

---

[1]Family Dollar also relies on testimony given by another deputy prosecuting attorney, Fred Thorne. However, Thorne was not involved in making the decision on probable cause to arrest Huff and Ward. Instead, Thorne was the prosecutor assigned to try the case in circuit court and who eventually made the decision to nolle pros the charges.

*Zeno*, 64 Ark. App. 79, 983 S.W.2d 136 (1998). However, to avail itself of the defense, Family Dollar must have made a full, fair, and truthful disclosure of all facts known to it and acted in good faith on counsel's advice. *Id*. Family Dollar has the burden of proving this defense. *Id*.

The jury in this case was instructed on the advice-of-counsel defense. According to Huff and Ward, the jury might well have found that Family Dollar did not fully disclose to counsel all facts known to its investigator, in particular that Dan Gazaway, Family Dollar's investigator in this matter, believed that Huff and Ward were telling the truth when they told him that they had permission from Stripling and others to sell the trailers. We agree.

Jimmy Huff testified that he had previously bought surplus Family Dollar property by going to his supervisor at the time, Richard Morgan. Regarding the trailers in question in this lawsuit, he said that he spoke with his supervisor, Dennis Stripling, about purchasing some of the trailers that did not pass the integrity tests and that Stripling spoke with Mike Preston, Family Dollar's regional transportation manager in West Memphis, and Bennie Stinson, Family Dollar's corporate fleet-maintenance manager, to get approval. According to Huff, Stripling later told Huff he could buy trailers for $400. Huff and Ward purchased and then sold other trailers over a one-year period, turning the $400 cost of each trailer over to Stripling. Huff assumed that Stripling was forwarding the money to Family Dollar.

Bennie Stinson testified that, at the time, Family Dollar had no written policies or procedures in place for the disposition of property. Stinson stated that he advised Stripling about the process he used at Family Dollar's corporate office in North Carolina regarding

5

SLIP OPINION

disposal of Family Dollar's property, but left it up to Stripling and Preston to determine the process for disposing of property at the West Memphis Distribution Center. One of the purchasers of multiple trailers, James Kitchens, testified that he personally talked with Stinson, who advised him that the disposition of the trailers was up to Stripling.

Dan Gazaway testified that Preston told him that Stripling had authorization from Stinson to dispose of some trailers. He also said that Huff repeated his statement outlined above. Gazaway stated that Preston knew trailers were either being sold or given away, which is why Preston was fired. Gazaway stated he never told the prosecutors or the police that he believed Huff and Ward were being truthful or that they were acting pursuant to instructions from Stripling, Preston, or Stinson.

Lieutenant Troy Galtelli of the West Memphis Police stated that it would have been significant in his investigation to know that a management official allowed the trailers to be sold. He also did not recall Gazaway's telling him that Stripling set the prices for the trailers and that Huff and Ward paid that price before reselling the trailers. Galtelli said that, under those circumstances, he did not think that it would be theft, and he would not have filed the charges.

Tonya Alexander, the special judge who issued the warrants for Huff's and Ward's arrests, testified that she was not sure if she had been told that Huff and Ward sold the trailers with the permission of their supervisor, and that it would have been important to know this information. Alexander agreed that if Family Dollar had given permission for Huff and Ward to sell these trailers, then they could not have been charged with theft of property. She stated

that she did not remember if she had read the Family Dollar reports prepared by Gazaway, nor could she even state that the documents had been submitted to her.

Where testimony is in sharp conflict, it is the province of the jury, not the circuit court, to resolve such conflict. *Kellerman, supra.* In particular, when the evidence conflicts as to what a defendant told his attorney in a malicious-prosecution action, a jury question is presented on the advice-of-counsel defense. *Id.* This was the view taken by the circuit court in denying Family Dollar's motions for directed verdict. Viewing the testimony in the light most favorable to Huff and Ward, there is substantial evidence that Family Dollar did not make a full, fair, and truthful disclosure to Fairley, the prosecuting attorney. A jury may reject the advice-of-counsel defense if there is substantial evidence that the defendants either did not impartially state all the facts to counsel or did not honestly and in good faith act upon the advice given to them. *Id.*

This same evidence would also support the jury in finding that Family Dollar lacked probable cause to file criminal charges against Huff and Ward. Huff and Ward were charged with theft of property. A person commits theft of property if he or she knowingly takes or exercises *unauthorized* control over, or makes an *unauthorized* transfer of an interest in, the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013). If the testimony from Huff and Ward that they had permission from Dennis Stripling to sell the trailers was believed, then they would not be guilty of making *unauthorized* transfers of Family Dollar property. Gazaway testified that he never told prosecutors that Huff and Ward were acting pursuant to Stripling's instruction

or that Stripling's superior, Mike Preston—Family Dollar's regional transportation manager—signed asset-disposal forms indicating that some of the trailers had been disposed of.

Malice, the fourth element of a cause of action for malicious prosecution, can be inferred from the lack of probable case. *Wal-Mart Stores, Inc. v. Williams*, 71 Ark. App. 211, 29 S.W.3d 754 (2000). We hold that there was evidence upon which the jury could have found malice. Gazaway testified that he had been instructed by Charlie Gibson, the senior vice president of the supply chain, to prosecute Huff and Ward. There was also testimony from Raina Avalon, Family Dollar's vice president of transportation, that although Huff and Ward stated that they had permission from Dennis Stripling to sell the trailers, that information was not confirmed. This evidence, along with the allowable inference of malice, presented a question of fact, properly left for the jury. Gazaway testified that his superiors wanted Huff and Ward prosecuted. This is also the sort of "automatic" decision to prosecute that was condemned in *Wal-Mart Stores, Inc. v. Yarbrough*, 284 Ark. 345, 349, 681 S.W.2d 359, 362 (1984). *See also Burkett v. Burkett*, 95 Ark. App. 314, 236 S.W.3d 563 (2006).

We hold that the evidence was sufficient to support the claims for malicious prosecution and the circuit court properly allowed the matter to go to the jury.

This brings us to Family Dollar's argument that the evidence was insufficient as a matter of law to establish the cause of action for outrage. We agree. Arkansas courts have consistently taken a narrow view in recognizing claims for the tort of outrage. *City of Green Forest v. Morse*, 316 Ark. 540, 542, 873 S.W.2d 155, 156 (1994). Indeed, the Arkansas Supreme Court has taken great care to point out that this tort does not make actionable every

"insult or indignity one must endure in life," *Dillard Dep't Stores, Inc. v. Adams*, 315 Ark. 303, 305, 867 S.W.2d 442, 443 (1993) (quoting *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 244, 743 S.W.2d 380 (1988)), but instead provides a basis for recovery only for "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *M.B.M. Co. v. Counce*, 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980). Arkansas caselaw makes clear that "[t]he tort of outrage is not easily established; merely describing conduct as outrageous does not make it so. Clear-cut proof is necessary to establish the four elements" of this tort. *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 34, 781 S.W.2d 31, 35 (1989). In *Cordes*, the supreme court specifically held that allegations that the defendants caused the plaintiffs to be arrested, even if proven, did not rise to a level sufficient to support a claim for damages for the tort of outrage. *See also Adams, supra*; *Miller v. Kroger Co.*, 82 Ark. App. 281, 105 S.W.3d 789 (2003).

The supreme court's statement in *Adams* is appropriate in this case:

> We do not mean to say that Dillards' employees' actions were merely a "slight insult." We recognize Ms. Adams may well have suffered mental distress as a result of them. She was accused of a crime of which she was not convicted. We cannot, however, find in the facts alleged or shown the kind of "extreme degree" of outrageous conduct "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Whatever the merits of the claim of Dillards and Ms. Hallmark as to Ms. Adams's conduct (and we assume no merit in them for purposes of this appeal) nothing that was done constituted conduct fitting our definition of "outrage."

*Adams*, 315 Ark. at 306, 867 S.W.2d at 443–44. Applying this standard for the tort of outrage, we cannot say that Huff and Ward's evidence is sufficient to sustain their claims for outrage.

9

SLIP OPINION

Accordingly, we reverse and dismiss the claims for outrage.

Finally, Family Dollar argues that the damages awarded for malicious prosecution are excessive, unsupported by the evidence, and appear to have been given under the influence of passion or prejudice.[2] Our standard of review for an award of compensatory damages on appeal is as follows:

> When an award of damages is alleged on appeal to be excessive, we review the proof and all reasonable inferences most favorable to the appellee and determine whether the verdict is so great as to shock our conscience or demonstrate passion or prejudice on the part of the jury.

*Allstate Ins. Co. v. Dodson*, 2011 Ark. 19, at 14, 376 S.W.3d 414, 425 (citing *Bank of Eureka Springs v. Evans*, 353 Ark. 438, 455, 109 S.W.3d 672, 682 (2003)). The burden to be met under this standard of review in such a case is whether there is substantial evidence to support the verdict. *Id.*

The jury was instructed, *without objection* by Family Dollar, that if it found for Huff and Ward on the question of liability for malicious prosecution, then it should award damages for their mental anguish and reasonable expenses incurred in the defense of the prior criminal proceeding. A plaintiff may recover general damages in the form of compensation for the mental strain, emotional distress, embarrassment, humiliation, harm to reputation, and perhaps fear of imprisonment arising from the prosecution. *Evans*, *supra*. Humiliation and embarrassment are part of the mental-anguish element of damages. *Yam's Inc. v. Moore*, 319 Ark. 111, 890 S.W.2d 246 (1994). The amount of damages growing out of mental anguish

---

[2]Because of our reversal of the outrage claim, we need not address Family Dollar's arguments concerning the damages on that claim.

is ordinarily left to the determination of the jury. *Harold McLaughlin Truck Brokers v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996); *Pursley v. Price*, 283 Ark. 33, 670 S.W.2d 448 (1984).

What was the evidence of damages? First, the only out–of–pocket expense was the $2,500 Huff and Ward each paid to attorney Chet Dunlap for representation in the criminal case. Second, both Huff and Ward were arrested and spent a short time in jail. They testified that they suffered from anxiety and sleepless nights. They further testified that they suffered damage to their reputations after being labeled as thieves. There was testimony that Huff became distant from his family, and his blood pressure rose. He also was embarrassed because he had involved his long-time friends. Huff also had to borrow money from friends and family to meet his living expenses after being unable to draw from his 401(k) account. According to Huff, these events caused him to drink heavily for a period. While Ward found other employment, Huff testified that he has not been able to do so because of the accusation by Family Dollar. He was making approximately $45,000 per year at the time he was fired. In light of the concurring and dissenting opinions authored by the minority in this case, it bears repeating that we, as an appellate court, do not weigh the evidence and supplant the role of the jury. *E.g.*, *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005). Whether each of us, had we been seated as a juror, would have found the facts as this jury did is not the question. Rather, we are to determine if the circuit judge was correct in his determination that there was substantial evidence to allow the jury to make the decision. *Id.*

Family Dollar further contends that the jury's damages award was made under the

influence of passion or prejudice. We require more than the bald assertion that a verdict is the result of passion and prejudice to reverse. *Davis v. Davis*, 313 Ark. 549, 557, 856 S.W.2d 284, 288 (1993). Our colleagues in the concurring and dissenting opinions suggest that these gentlemen "hit the lottery." Such a statement is dismissive of the jury and the circuit judge who heard the testimony and observed the witnesses in this case. The cases are legion wherein we claim to give near total deference to the fact-finder's determination of the weight of the evidence and the credibility of the witnesses. We are at a loss as to why those same principles should not apply in this case. The court's conscience is never shocked when a jury returns a verdict for $0.00 in a case of liability. *E.g.*, *Wallis v. Keller*, 2015 Ark. App. 343, 464 S.W.3d 128 (citing *Fritz v. Baptist Mem'l Health Care Corp.*, 92 Ark. App. 181, 211 S.W.3d 593 (2005)). In reviewing the proof most favorably to Huff and Ward, as we are required to do, we cannot say that the verdict demonstrates passion or prejudice on the part of the jury or shocks the conscience of this court. *Id.*

Affirmed in part; reversed and dismissed in part.

KINARD, GRUBER, VAUGHT, and HOOFMAN, JJ., agree.

GLADWIN, C.J., and HARRISON, WHITEAKER, and HIXSON, JJ., concur in part and dissent in part.

**BRANDON J. HARRISON, Judge, concurring and dissenting.**   I agree with all of my colleagues' decisions that the outrage claim and the related damages verdict and judgment must be reversed and dismissed.   I also agree with the majority that substantial evidence supports the jury's verdict on the malicious-prosecution claim.

I respectfully dissent, however, on the amount of money the jury awarded on that claim. A $2.75 million aggregate award in favor of Jimmy Huff and Robert Ward is shockingly excessive and should be significantly reduced. The jury decided that these men were damaged by Family Dollar's actions. But even viewing the evidence in the light most favorable to Huff and Ward, the record buckles under the weight of the judgment.

Let's begin with the arrests. Chet Dunlap, Huff and Ward's criminal defense attorney, testified that he allowed Huff to go to the West Memphis Police Department to speak with Detective Galtelli on a Friday afternoon, believing he would not be arrested, because Dunlap did not believe Huff had done anything wrong. Huff testified that, after he was arrested around 4:30 p.m. that Friday afternoon, he sat in the back of a car, was transported to jail, fingerprinted, booked, and photographed. Attorney Dunlap said he was "shocked" when Huff was arrested and called a circuit judge he had known for a long time and asked the judge to set a bond. The circuit judge did so. As a result, Dunlap successfully prevented Huff from having to stay in jail over the weekend. Huff still said the experience made him feel "like a thief and a criminal." Ward was not quite as fortunate; he spent about an hour in jail after being arrested and held in the "holding tank" and was also fingerprinted and photographed. Ward said he felt "abused." Neither man had a prior criminal history.

Here is more about Ward and Huff as gleaned from the trial testimony.

Ward, 59, started with Family Dollar in 1998, as a Class C Mechanic. He worked second shift in the truck shop and repaired storage trailers. We have no information on the money he was making at Family Dollar when his employment was terminated. We have no

13

information on any employment-related benefits he was receiving or may have been entitled to receive. We have no information about his work-performance history with Family Dollar and whether he could have reasonably expected to continue working for Family Dollar for any number of years to come. Ward did not mention the scarcity of jobs in the region where he lived. He did say that the turmoil "caused me a lot of sleepless nights and a lot of knots in my stomach. It's been a really bad few years."

Huff testified that he started with Family Dollar in September 1996 as a Class B Mechanic and began the maintenance shop/inspection process for the company. He also said that Family Dollar fired him right before Christmas, and his four-year-old daughter "wants everything at Walmart we look at, and I ain't got a job, couldn't draw unemployment, couldn't go to work anywhere 'cause a felony was [pending]." And Huff explained that his mother mortgaged her house a second time and loaned him $10,000. Another friend, said Huff, gave him $10,000 and told Huff to pay him back whenever he could.

Huff also told the jury about the difficulty in finding a job comparable to the one he enjoyed at Family Dollar. "[I]t's hard to find a job that you like that you enjoy doing . . . I kind of fit the job and my job kind of fit me." And he explained that there were not many places to find a job that, back in 2006, paid $22.50 an hour for a 40-hour week, 52 weeks a year. Huff took pride in the work he did for Family Dollar and came up with procedures and policies to help Family Dollar. Though Huff eventually became a self-employed dump-truck driver, he told the jury that being criminally charged had "greatly" impacted him personally:

> I don't really like tellin' my business to people. I kinda try to stay
> private and I had to go back to the people I had sold trailers to

14

and tell 'em what happened, and apologize 'em for bringin' 'em into this situation. . . my mother had to mortgage her house. . . at the time, I couldn't get my 401K out to even survive. . . it's been really tough . . .You find out who your friends are. . . I still hear the word crook, you know, watch that boy, he's a crook. . . I'm sure in every town it's the same but you don't hear nothin' about the good stuff that people do. You always hear the bad that people do, you know. And in a small town of five thousand people, I mean especially trying to survive in the truckin' business where sometimes you need the people. . . you get that feeling, yeah, I'm still bein' talked about and this is gonna hurt me from now on, you know. And that bothered me.

Huff's wife "went through a hard time," and he "drank quite a bit for a while." Mrs. Huff said that it was "awful" after her husband was arrested, that he grew distant, and that his blood pressure increased. She did not file a loss-of-consortium claim.

No one sought and received psychological counseling or any other treatment from a medical-care provider as far as the record reveals.

The circuit court instructed the jury on these two types of damages related to the malicious-prosecution claims: (1) mental anguish and (2) reasonable expenses for defense of their criminal prosecution. Damages for mental anguish are recoverable for malicious-prosecution claims. *See Yam's Inc. v. Moore*, 319 Ark. 111, 117, 890 S.W.2d 246, 249 (1994). The amount of damages associated with mental anguish, and other elements of damage, is usually a jury question; and we do not typically substitute our judgment for the jury's. *See Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 742, 120 S.W.3d 61, 68 (2003).

Remittitur is an exception to the usual deference given to a jury's verdict, however, and Family Dollar has asked that we significantly reduce the judgment amount if not reverse it outright. A remittitur is appropriate when a jury returns a conscience-shocking verdict, or

15

one that resulted from passion or prejudice. *Advocat, Inc. v. Sauer*, 353 Ark. 29, 43, 111 S.W.3d 346, 353 (2003); Ark. Code Ann. § 16-64-123 (Repl. 2009). When a remittitur is considered, the question to be answered is whether substantial evidence supports the jury's award. *Id.* The answer to this question turns on each case's facts. *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 742, 120 S.W.3d 61, 69 (2003) (deciding if a remittitur was proper on a case-by-case basis and reviewing the proof and all reasonable inferences in a light most favorable to the appellee). On appeal, when determining whether the amount was so great as to shock our judicial conscience, we may consider past and future medical expenses, permanent injury, loss of earning capacity, scars resulting in disfigurement, pain, suffering, and mental anguish. *See Bill Davis Trucking, Inc. v. Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990). If we find the jury's damages award to be excessive, a remittitur may correct the error. *Avery v. Ward*, 326 Ark. 829, 837, 934 S.W.2d 516, 521–22 (1996) (general verdict usually requires new trial but when an error relates to a separable item of damages, a new trial might be avoided by a remittitur). The judgment amount should be reduced to the most liberal amount that could be approved had the jury returned a verdict for that sum in the first place. *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, at 15, 319 S.W.3d 239, 250.

The amount of compensatory damages awarded for the malicious prosecution in this case—$2.75 million—is shocking. Huff and Ward were damaged. But the related evidence was limited to testimony describing Huff and Ward as distant, upset, and embarrassed by their arrests. Neither Huff nor Ward spent a night in jail. The felony theft charges were nolle prossed by the prosecutor—though I wholly grant that no one benefits from a felony charge

hanging around his neck like an albatross, even if the charge is not fully pressed. The most physically tangible manifestation of the stress Huff and Ward experienced seemed to be a loss of sleep and Huff's increased use of alcohol. (But for how long Huff increased his drinking, by how much, and at what financial, personal, or familial cost is guesswork.) Huff's wife testified that his blood pressure increased given the bad experience—but no specific, adverse medical condition or personal-discomfort link was made. We are also left groping for evidence about what specific economic harm was done by the malicious prosecution for the same reason: no testimony (expert or otherwise) addressed the lost earnings, or the lost-earning potential, of Huff or Ward. The record is completely silent as to Ward's earnings. The only out-of-pocket expenses were that Huff and Ward incurred attorney's fees for having to defend the criminal charges ($5,000); and Huff received up to $20,000 in loans from his mother and a friend.

"A damages award is not a lottery ticket[.]" *Vaccaro Lumber v. Fesperman*, 100 Ark. App. 267, 267 S.W.3d 619 (2007). I would substantially reduce the judgment and bring it in line with the proof because, in my view, Huff and Ward hit the lottery.

WHITEAKER, J., agrees.

**KENNETH S. HIXSON, Judge, concurring and dissenting.** Our court is in agreement that the jury's verdict on the tort of outrage must be reversed, but we are in marked disagreement about the cause of action for malicious prosecution and resulting damages. I believe that there was insufficient evidence presented to allow the claim for malicious prosecution to go to the jury, or the court should have granted the motion for

judgment notwithstanding the verdict, such that our court must reverse and dismiss on malicious prosecution and the accompanying compensatory award.[1]  Huff and Ward failed to prove the absence of probable cause for charges being filed against them, an essential element of this tort.   Furthermore, Family Dollar established that it was entitled to rely on the prosecutor's decision to file charges and prosecute Huff and Ward.  For these reasons, there was insufficient evidence to submit the plaintiffs' claims for malicious prosecution to the jury, and the trial court erred in failing to direct a verdict on Family Dollar's behalf.

Even when we view the evidence in favor of the appellees, which we must,  here is the essential evidence reflected in the record:

- Jimmy Huff testified that over a period of one and one half years, he purchased 12 Family Dollar Store trailers from Dennis Stripling and then resold the trailers.
- Jimmy Huff told Detective Galtelli prior to his arrest that Dennis Stripling set the prices on the Family Dollar Store trailers.
- Jimmy Huff testified that he sold ten Family Dollar Store trailers to James Kitchens and sold two Family Dollar Store trailers to Rusty Evans. Evans returned his two trailers.
- Huff testified that he purchased the first Family Dollar Store trailer from Dennis Stripling for $400 and sold the trailer to James Kitchens for $1,000 and made a $600 profit.
- James Kitchens wrote checks or paid cash to Huff for the trailers he purchased.
- Dan Gazaway, investigator for Family Dollar Store, testified that Jimmy Huff told him that he (Huff) was selling the Family Dollar Store trailers between $1,000 and $1,500 each, depending on the type of trailer.  Huff said that

---

[1]I further submit that, even if there was sufficient evidence to support a jury verdict on malicious prosecution, the jury's compensatory awards of $1.75 million to Huff and $1 million to Ward shock the conscience of the court.  I join with the dissent authored by Judge Harrison, in which he explains why these compensatory awards are excessive and should be remitted.


Dennis Stripling had quoted him a price of b²etween $400–$900 for each trailer.

- Jimmy Huff told Detective Galtelli that he delivered cash to Dennis Stripling for the Family Dollar Store trailers he sold.

- Jimmy Huff signed the bills of sale personally and not on behalf of Family Dollar Store.

- Robert Ward sold 12 Family Dollar Store trailers and bartered another trailer in exchange for a race car motor.

- Checks were written to Robert Ward personally in payment for the trailers, and Robert Ward signed the bills of sales personally and not on behalf of Family Dollar Store.

- Robert Ward testified that he sold two Family Dollar Store trailers to Taylor Stucky Incorporated for $800 each, that he paid Dennis Stripling $400 each for two trailers, and that he doubled his money.

- Robert Ward testified he sold eight Family Dollar Store trailers to Hart Farms for the sale price of $600 each, that he paid Dennis Stripling $400 for each trailer, and that he made a profit of $200 on each trailer sold.

- Both Huff and Ward testified that they believed that Stripling was delivering the cash payments for the trailers to Family Dollar Store.

- It is undisputed that Dennis Stripling was involved in all of the Huff and Ward trailers sales. Prior to trial, Stripling pleaded guilty to a misdemeanor theft charge.

- Detective Galtelli testified that the information in his report was based on his own investigation and that all of the information was verified independent of Family Dollar.

- Detective Galtelli testified that: "I determined that charges were appropriate to be filed against Mr. Huff, Mr. Ward, and Mr. Stripling. I came to that determination with the evidence and statements we collected throughout the investigation. . . . I did not at any point in time take direction from Family Dollar with respect to filing charges against these three men."

  Jimmy Huff and Robert Ward retained the services of Chet Dunlap to represent each of them in the criminal matter. Chet Dunlap testified that he agreed there was probable cause to arrest Ward and Huff for theft of property and further testified that he stipulated to the probable cause on Huff in a bond hearing with a circuit judge.[2]

[2]In *Broaddus v. Campbell*, 911 S.W.2d 281, 285 (1995), the court of appeals for Kentucky stated that "actions for malicious prosecution have traditionally been disfavored due to the chilling effect on those considering reporting a crime." Further, the court stated that

The then-prosecutor agreed that probable cause existed to arrest Huff and Ward, even if some of the trailers were given away with Family Dollar's permission. The then-prosecutor also knew that Huff sold trailers with Stripling's permission.

We have held that two essential elements of the tort of malicious prosecution are lack of probable cause and malice. *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). "The test for determining probable cause is an objective one based not on the accused's actual guilt, but upon the *existence of facts or credible information* that would induce a person of ordinary caution to believe the accused to be guilty." (Emphasis added.) *Walmart Stores, Inc. v. Yarbrough*, 284 Ark. 345, 348, 681 S.W.2d 359 (1984). Furthermore, acting upon the advice of counsel is a defense to a charge of malicious prosecution. *Kellerman v. Zeno*, 64 Ark. App. 79, 983 S.W.2d 136 (1998). To avail itself of the defense, Family Dollar must have made a full, fair, and truthful disclosure of all facts known to it and acted in good faith on counsel's advice. *Malvern Brick & Tile Co. v. Hill*, 232 Ark. 1000, 342 S.W.2d 305 (1961). Family Dollar had the burden of proving this defense by a preponderance of the evidence. *Eggleston v. Eggleston*, 291 Ark. 317, 724 S.W.2d 462 (1987). Family Dollar clearly carried that burden.

Giving of information, or even making an accusation of criminal misconduct, does not constitute procurement of the proceedings initiated by the prosecutor if it is left entirely to the discretion of the prosecutor whether to initiate proceedings. *Restatement (Second) of Torts* § 653, comment g (1977) . The exercise of the prosecutor's discretion makes the initiation

---

in a malicious-prosecution case, where a defendant agrees or acquiesces to the existence of probable cause, a malicious-prosecution action cannot be maintained.

of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings. *Id*. A viable malicious prosecution case can be maintained when the information provided was known to be false, or if the desire of the reporting person to have the prosecution commenced, is the determining factor in the prosecutor's decision to prosecute. *Id*. Our standard of review of the denial of a motion for judgment notwithstanding the verdict is the same as that for a denial of a directed-verdict motion. *Carter v. Cline*, 2011 Ark. 474, 385 S.W.3d 745. Thus, a circuit court may enter a judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the moving party is entitled to judgment as a matter of law. *Ford Motor Co. v. Washington*, 2013 Ark. 510, 17, 431 S.W.3d 210, 220.

Here, the record is absolutely void of any evidence of lack of probable cause.[3] Further, the record is replete with evidence that Family Dollar satisfied its burden of proof for the advice-of-counsel defense. In my opinion, the trial court erred in failing to direct a verdict in favor of Family Dollar and erred in failing to grant the motion for JNOV. There is no substantial evidence to support the jury's verdict, and I would reverse.

I am authorized to state that Chief Judge Gladwin joins this dissent, with the exception that he does not join that part discussing remittitur in footnote 1.

Concurring in part; dissenting in part.

---

[3]Huff and Ward also failed to present any evidence of malice or any evidence from which malice may be inferred, which is an essential element of the cause of action for malicious prosecution. Malice has been defined as any improper or sinister motive for instituting the suit. *Sundeen v. Kroger*, 355 Ark. 138, 133 S.W.3d 393 (2003).



*Spicer, Rudstrom, PLLC*, by: *Betty Ann Milligan* and *Bradford J. Spicer*; and *Wright, Lindsey & Jennings LLP*, by: *Edwin L. Lowther, Jr.*, *Troy A. Price*, and *Kristen S. Moyers*, for appellants.

*Porter Law Firm*, by: *Austin Porter, Jr.*, for appellees.