Berniece BALENTINE *v.* Lisa SPARKMAN, et al.

96–196                                     937 S.W.2d 647

Supreme Court of Arkansas
Opinion delivered February 3, 1997

182

*Matthews, Sanders, & Sayes*, by: *Margaret M. Newton* and *Mel Sayes*, for appellant.

*Comer Boyett, Jr.*, and *J. Russell Green*, for appellee Lisa Sparkman.

*Odell Pollard, P.A.*, by: *Odell Pollard*, for appellee Jerry Howell, Jr.

ANNABELLE CLINTON IMBER, Justice. This cause of action arose out of a traffic accident that occurred on May 19, 1990, in Heber Springs, Arkansas, during which a station wagon owned by Berniece Balentine and driven by Billy Sparkman collided with a Jeep driven by Jerry Howell.

On the evening of May 19, 1990, Lisa and Billy Sparkman were visiting Berniece Balentine, who is Lisa Sparkman's grandmother. While at the Balentine residence, Billy Sparkman thought he observed lightning strike a relative's home. Lisa, Billy, and Ms. Balentine decided to drive to the home to determine if the lightning had caused any damage. Because it was dark and raining, Ms. Balentine asked Billy Sparkman to drive her station wagon, and he complied.

Billy drove the station wagon a few blocks before stopping at the intersection of Highway 25 and Scott streets. Billy asked the passengers if they detected any oncoming traffic. Ms. Balentine and Lisa told Billy that the intersection was clear. Billy drove the station wagon halfway into the intersection when it was struck in the rear passenger door by a Jeep driven by Jerry Howell. Lisa Sparkman was knocked unconscious and suffered permanent brain damage.

At trial, Ms. Balentine and Billy Sparkman testified that Howell was driving the Jeep without his headlights on, and that he did not turn on his lights until seconds before impact. However, Howell and an eyewitness told the jury that Howell did indeed have his headlights on as he approached the intersection. Immediately after the collision, Howell overheard Billy Sparkman crying and exclaiming that the accident was his fault.

Ms. Balentine and Billy Sparkman testified that Billy had not been drinking alcohol the night of the accident. Likewise, a police officer and two other witnesses testified that they did not detect the presence of alcohol on any of the parties to the accident. However, Howell, an eyewitness, and Howell's two sisters claimed that they detected alcohol on Billy Sparkman's breath, that he staggered, and that his speech was slurred.

The jury found that at the time of the accident Billy Sparkman was acting as Berniece Balentine's agent, that Balentine had negligently entrusted Sparkman with the operation of the station wagon, and that Lisa Sparkman, Billy Sparkman, and Berniece Balentine were engaged in a joint enterprise. Furthermore, the jury apportioned fault as follows: Lisa Sparkman (injured party) 0%, Jerry Howell (driver of the Jeep) 0%, Billy Sparkman (driver

of the station wagon) 45%, and Berniece Balentine (owner of the station wagon) 55%. Hence, Billy Sparkman and Berniece Balentine were held legally responsible for the $250,000 in damages suffered by Lisa Sparkman.

Immediately after the jury rendered its verdict, Balentine made a motion for a judgment notwithstanding the verdict and a motion for a new trial. Both were denied, and Balentine appeals. Although the jury completely exonerated Jerry Howell of any liability for the accident, he cross-appealed alleging three trial errors.

### 1. Negligent Entrustment/AMI 609 Jury Instructions.

For her first argument on appeal, Berniece Balentine alleges that the trial judge erred in a) denying her motion for a directed verdict on the issue of negligent entrustment, b) instructing the jury on negligent entrustment, and c) rejecting her motion for a judgment notwithstanding the verdict. These arguments are essentially a challenge to the sufficiency of the evidence, and thus should be considered together. See, Medlock v. Burden, 321 Ark. 269, 900 S.W.2d 552 (1995).

When reviewing the sufficiency of the evidence, this court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. Anslemo v. Tuck, 325 Ark. 211, 924 S.W.2d 798 (1996). The verdict will be affirmed if there is substantial evidence to support it. Medlock, supra. Substantial evidence is evidence that passes beyond mere suspicion or conjecture and is of sufficient force and character that it will with reasonable and material certainty compel a conclusion one way or the other. Id.

In the present case, the jury found that Balentine negligently entrusted her station wagon to Billy Sparkman. To establish negligent entrustment under Arkansas law, the plaintiff must show that: 1) the entrustee was incompetent, inexperienced, or reckless; 2) the entrustor knew or had reason to know of the entrustee's conditions or proclivities; 3) there was an entrustment of the chattel; 4) the entrustment created an appreciable risk of the harm to the plaintiff and a relational duty on the part of the defendant; and 5) the harm to the plaintiff was proximately or

legally caused by the negligence of the defendant. *Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996); *Mann v. Orrell*, 322 Ark. 701, 912 S.W.2d 1 (1995). On appeal, Balentine alleges that there was insufficient evidence to support the jury's finding on the first and second elements of negligent entrustment.

### a. The entrustee was incompetent.

First, Balentine claims that there was insufficient evidence to support the jury's finding that Billy Sparkman was incompetent, or in this case, intoxicated at the time of the accident. As mentioned above, several witnesses asserted that Sparkman smelt of liquor, staggered, and slurred his speech; while several other witnesses claimed that he did not appear intoxicated. This court has repeatedly held that it is the sole province of the jury to determine the credibility of the witnesses and the weight of their testimony. *Russell v. Colson*, 326 Ark. 112, 928 S.W.2d 794 (1996). Therefore, the jury was free to believe the witnesses who claimed that Sparkman was intoxicated over those who alleged that he was not.

Citing *City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995), Balentine next argues that Sparkman's mere consumption of alcohol did not establish that he was driving in a negligent manner. Although Balentine's assertion of the law is correct, her application to the facts at hand is erroneous. In *Cameron*, the defendant crashed his car into a traffic pole owned by the City of Little Rock. *Id.* The officer who arrived at the scene of the accident testified that Cameron smelled of alcohol and registered a .05 percent blood–alcohol level. *Id.* On appeal, we held that the mere fact that Cameron had been drinking alcoholic beverages was not sufficient evidence to establish negligence. *Id.* Specifically, we explained that:

> there was no evidence that Cameron was intoxicated or *otherwise impaired* at the time of the accident or that his liquor consumption either evidenced a lack of reasonable care on Cameron's part or caused the wreck in any way. In sum, we agree that the City's proof does not give rise to an inference of negligence but only to conjecture and speculation.

*Id.* (emphasis added).

█ This case is distinguishable from *Cameron* in that in addition to showing that Sparkman had consumed alcohol, the witnesses also declared that he staggered and slurred his speech. Therefore, it was reasonable for the jury to conclude that Sparkman's consumption of alcohol had impaired his physical abilities, and more importantly, his ability to operate the vehicle in a reasonable manner. Thus, we find that there was sufficient evidence to support the jury's conclusion that Sparkman negligently operated the station wagon.

### b. The entrustor knew of the incompetence.

Balentine also attacks the jury's finding of the second element of negligent entrustment that the entrustor knew or had reason to know of the entrustee's incompetence. At trial, Billy Sparkman explained to the jury that prior to the accident he was at Balentine's home, and that they drove only a few blocks before they entered the intersection where the accident occurred.

██ It is well settled that a jury is allowed to draw upon their common knowledge and experience in reaching a verdict from the facts proven at trial. *Robinson v. State*, 317 Ark. 17, 875 S.W.2d 837 (1994). Moreover, it is appropriate for the jury to draw reasonable inferences from the facts presented at trial. *Anslemo; supra.* Hence, we find that the jury could have reasonably inferred that if Sparkman was intoxicated at the time of the accident, he would have also exhibited similar physical signs of intoxication moments before the accident when Balentine entrusted him with the operation of her car. Thus, we find that there was sufficient evidence to support the jury's conclusion that Balentine negligently entrusted the station wagon to Sparkman. In view of this finding, we likewise hold that the trial court did not err in instructing the jury on negligent entrustment.

### 2. Motion for Mistrial.

For her next argument on appeal, Balentine asserts that she should have been granted a mistrial when Howell's attorney repeatedly referred to evidence excluded by the trial court about

the alleged presence of beer containers in the station wagon at the time of the accident.

This court has repeatedly held that a mistrial is a drastic remedy which should only be used when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when fundamental fairness of the trial itself has been manifestly affected. *Peeler v. State*, 326 Ark. 423, 932 S.W.2d 312 (1996). The trial court has wide discretion in granting or denying a motion for a mistrial and absent an abuse the decision will not be disturbed. *Id.* Finally, a mistrial will only be granted where any possible prejudice could not have been removed by an admonition to the jury. *Id.*

During a pretrial conference, it was established that the Sparkmans had a six-pack of beer in their vehicle when they arrived at Balentine's home, and that a witness would testify that he observed three unopened containers of beer in Balentine's station wagon at the time of the accident. The trial judge held that testimony regarding both of these alleged facts was more prejudicial than probative of the issue of whether Sparkman was intoxicated at the time of the accident. Therefore, the judge granted a motion in limine excluding all evidence on either point and instructed the attorneys to approach the bench if they intended to refer to the evidence.

During her direct testimony, Berniece Balentine mentioned that Lisa Sparkman had placed glass baby bottles at her feet in the back seat of the car, and that after the accident, the police officer brought these bottles to the hospital. Despite the judge's previous ruling and instruction to all attorneys, the following exchange occurred while Howell's attorney cross-examined Balentine:

> ATTORNEY: Did you think it was necessary to put the bottles for the baby in the floorboard under Lisa's feet when you were making just a very short trip over to Lisa's —
>
> BALENTINE: Well, she always takes it with them, everywhere she goes.
>
> ATTORNEY: Well, let me finish my question. Now, the reason you are telling us about bottles for the baby, is it because you

know there's going to be some testimony there was some beer under Lisa's feet in that floorboard?

Balentine immediately objected and moved for a mistrial. The trial judge denied the motion, reminded Howell's attorney to approach the bench before mentioning the subject, and warned, "if it's done again, the Court is probably not going to have any option other than to grant a mistrial." The judge admonished the jury to disregard the testimony, and the trial continued.

Billy Sparkman was the next witness to testify at trial. Before Sparkman began to testify, Howell's attorney approached the bench and again asked for clarification on the motion in limine. Specifically, Howell's attorney told the judge that Nick Benny Butkovich, III, was going to testify that he saw beer bottles on the floorboard of the Balentine vehicle. Once again the judge explained that the evidence was excluded.

Despite the trial judge's warnings, Howell's attorney asked the following questions during his direct examination of Nick Benny Butkovich, III:

ATTORNEY: All right. Let me ask you this. Did you see anything on the floorboard there in the car?

BUTKOVICH: Yes, Sir; I believe I did.

ATTORNEY: Tell the members of the jury what you saw on the floorboard.

The judge immediately called the attorneys to the bench, reprimanded Howell's attorney, and sanctioned him by assessing a $25 fine. Balentine again moved for a mistrial which was denied. The judge did not admonish the jury to disregard the testimony.

■ We find that the express and implied references by Howell's attorney to beer on the floorboard of Balentine's vehicle were sufficient grounds for a mistrial; especially when there was contradictory evidence on the issue of whether Billy Sparkman was intoxicated at the time of accident. Moreover, the jury only heard brief allusions to beer containers in Balentine's car without clarification that they were *unopened*. Thus, the jury could have surmised that Howell's attorney was making reference to *opened*, and recently consumed bottles of beer. Simply put, Howell's

attorney rang the proverbial bell not once, but twice, and a mistrial should have been granted. Therefore, we must reverse as to all parties and remand for a new trial.

Because we reverse and remand for a new trial for the reasons stated above, we do not reach Balentine's other arguments on appeal. We will, however, address Howell's arguments raised on cross-appeal because they involve evidentiary matters that the trial court will address again at a new trial.

■ Howell's first argument on cross-appeal is that the trial court abused its discretion in excluding evidence of beer in the Sparkman and Balentine automobiles. As mentioned above, the trial court granted a motion in limine prohibiting the parties from mentioning the presence of unopened beer containers in either the Sparkman vehicle or the Balentine vehicle. The trial judge held that this evidence should be excluded under Ark. R. Evid. 403 because the prejudicial nature outweighed the probative value. This court has repeatedly held that a trial judge's ruling in this regard will be affirmed absent a showing of an abuse of discretion. *Peters v. Pierce*, 314 Ark. 8, 858 S.W.2d 680 (1993). We affirm the trial court's order excluding the evidence because Howell has failed to demonstrate an abuse of discretion.

Howell's second argument on cross-appeal is that the trial court committed prejudicial error when it precluded testimony that would have impeached Officer David Smith. On direct examination, Officer David Smith testified that he did not find any evidence that the parties to the accident had been consuming alcohol. Furthermore, Officer Smith said that he did not know of a request by any of the parties to have Billy Sparkman's blood-alcohol level tested.

In an effort to impeach Officer Smith's testimony, Howell attempted to introduce evidence that he and his father asked Officer Smith to test Billy Sparkman's blood-alcohol level, and Officer Smith responded:

> This man doesn't need a DWI charge, he's got more problems than he can handle now because his wife is probably going to die.

Although a witness may be impeached with prior inconsistent statements, the trial judge excluded this testimony on grounds that it was impermissible extrinsic evidence offered to prove a collateral matter. Ark. R. Evid. 613 & 801(d)(1). We disagree.

According to *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993), *cert. denied*, 510 U.S. 1197 (1994), a matter is not collateral if:

> the cross-examining party would be entitled to prove the issue as part of the case in chief, or if the evidence is relevant to show bias, knowledge, or interest.

Whether or not Billy Sparkman was intoxicated at the time of the accident was the central issue of this case; it simply was not a collateral matter. Hence, the trial judge's ruling excluding the alleged prior inconsistent statement must be reversed as an abuse of discretion.

Howell's final argument on cross-appeal is that the trial court committed prejudicial error when it would not permit two witnesses to testify to statements Billy Sparkman made while waiting in the hospital emergency room a short time after the accident. Specifically, Howell and his two sisters wanted to testify that they overheard Billy Sparkman exclaim several times that the accident was his fault. The trial judge excluded the evidence under Ark. R. Evid. 613 on the grounds that Sparkman would not be able to deny or respond to the statement. Because the parties could have simply recalled Sparkman to clarify his statement, Rule 613 did not apply.

However, Sparkman had already told the jury that he admitted fault at the scene of the accident. Therefore, his statements in the emergency room were merely cumulative and thus properly excluded under Ark. R. Evid. 403. Because the trial judge made the right decision for the wrong reason, we affirm as to this evidentiary ruling. *See, In re Estate of F.C.*, 321 Ark. 191, 900 S.W.2d 200 (1995).

Reversed and remanded; on cross-appeal, reversed in part.