# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 00-2602

_____

Columbus Miles,                         *
                                        *
            Appellant,                  *
                                        *       Appeal from the United States
      v.                                *       District Court for the
                                        *       Western District of Arkansas.
General Motors Corporation,             *
                                        *
            Appellee.                   *


_____

Submitted: April 9, 2001
    Filed: August 17, 2001

_____

Before HANSEN and BYE, Circuit Judges, and MELLOY,[1] District Judge.

_____

HANSEN, Circuit Judge.

Columbus Miles, a resident of Arkansas, collided with the rear bumper of a 1983 Chevrolet Silverado pickup truck while riding his motorcycle on a northern Louisiana highway. Miles's left leg was amputated below the knee as a result of the collision. Miles filed this diversity suit against General Motors Corporation (GM), the truck's manufacturer, and Harley Davidson, the manufacturer of his motorcycle, alleging a

_____

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa, sitting by designation.

breach of implied warranty, negligence, and strict products liability. Before trial, Harley Davidson was dismissed as a party. After a jury found in favor of GM, Miles filed a motion for a new trial, asserting newly discovered evidence, discovery abuse by GM, and that the district court erroneously admitted expert testimony and testimony surrounding Miles's alleged odor of alcohol after the accident. The district court[2] denied Miles's motion on all counts, and Miles appeals. We affirm.

I.

On October 28, 1995, at around 7:30 in the evening, Miles was traveling north on Highway 142 in Louisiana while riding his Harley Davidson Sportster motorcycle. The driver of a Silverado pickup truck attempted to turn south onto Highway 142 from an intersecting side road, but the truck stalled after crossing the center line and came to a stop partially blocking the northbound lane. Miles was traveling at approximately 55 miles per hour when he approached the stalled pickup truck, but he did not apply his brakes. Instead, Miles attempted to avoid hitting the truck by swerving around the rear, but at the last second straightened his bike because he thought he was about to hit a tree. By straightening the bike, however, the lower portion of Miles's left leg hit the truck's back bumper and his leg was irreparably damaged.

Immediately after the collision, the driver of the pickup truck and a nearby neighbor, who was a registered nurse, rendered first aid to Miles while awaiting an ambulance. Both the driver and the neighbor stated that Miles smelled of alcohol. A law enforcement officer, Fred Murphy, arrived at the accident scene to investigate. Officer Murphy stated that he could smell alcohol on Miles, but Officer Murphy did not conduct Breathalyzer or blood tests or note his observation in his accident report. Miles admitted at trial that he had consumed a portion of two beers shortly before the

---

[2]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

accident occurred. A toxicology screen was performed on Miles two and a half hours after the accident occurred and while he was admitted to a local hospital for treatment. Miles received 6000 cc of intravenous fluids and a partial blood transfusion before his blood was tested. The toxicology screen revealed no evidence of alcohol in Miles's bloodstream.

In Miles's suit against GM, he alleged that he was injured because the rear bumper on the pickup truck was negligently designed and was an unreasonably dangerous product. Miles contended that when the bumper was attached to the pickup truck, it curved around and extended beyond the side of the vehicle, resulting in a dangerous gap between the bumper and the sheet metal fender of the truck. Consequently, his theory was that the curved sharp end of the protruding bumper acted like a large hook upon impact with his leg. GM responded that its bumper was not defective and that Miles contributed to the accident by failing to take proper evasive action or by misperceiving the accident scene or both. Before trial, Miles filed a motion in limine to exclude any evidence of his alcohol consumption and the odor of alcohol at the accident scene, as well as to exclude the testimony of two GM expert witnesses who planned to testify that the GM bumper was not dangerous or defective and that Miles sustained the injury to his left leg when he struck the flat end of the bumper--not the curved, gapped end as he claimed. The district court denied the motion, holding the odor of alcohol evidence admissible because GM had raised comparative fault as an affirmative defense and further holding that the two expert witnesses were qualified to offer testimony about the bumper design, accident reconstruction, and injury causation. The case proceeded to trial, and a jury rendered its verdict in favor of GM. After the jury verdict, Miles filed a motion for new trial, but filed his notice of appeal prior to the district court's disposition of that motion. Subsequently, the district court denied the motion for a new trial.

II.

At the outset, Miles attempts to argue issues that were denied by the district court in Miles's motion for a new trial and which were not included in his notice of appeal filed prior to the postjudgment motion; specifically, uncovering newly discovered evidence of other bumper-related accidents and alleged discovery abuse by GM. At the time the notice of appeal in this case was filed on June 27, 2000, Miles's motion seeking a new trial had been filed but not decided. The district court did not deny the motion until July 18, 2000, after the notice of appeal had been filed. At that time, the appeal from the judgment ripened, and we gained jurisdiction. Under Federal Rule of Appellate Procedure 4(a)(4), Miles's notice of appeal is treated as merely dormant until the date the postjudgment motion is decided. Miles failed to file an amended notice of appeal from the district court's denial of his motion for new trial. We therefore lack jurisdiction over his challenges associated with the denied motion. See Fed. R. App. P. 4(a)(4)(B).[3]

Turning to the issues that Miles appeals which originate in the denial of his motion in limine, Miles first argues that the district court erred when it admitted evidence that he smelled of alcohol at the accident scene. We review a district court's admission of evidence for an abuse of discretion. Bunting v. Sea Ray, Inc., 99 F.3d

---

[3]Federal Rule of Appellate Procedure 4(a)(4)(B)(i)-(ii) in pertinent part states:

If a party files a notice of appeal after the court announces or enters a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A) [including a motion for new trial under Rule 59]--the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered. A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment altered or amended upon such a motion, must file . . . an amended notice of appeal . . . . (Emphasis added).

4

887, 891 (8th Cir. 1996). We find no abuse of discretion in this instance because Miles's alcohol consumption was relevant to the question of whether Miles contributed to the accident. See Balentine v. Sparkman, 937 S.W.2d 647, 650 (Ark. 1997) (allowing the jury to consider evidence of alcohol consumption when determining impairment); Inderrieden v. Phillips, 741 S.W.2d 255, 256 (Ark. 1987) (holding whether alcohol consumption contributed to an automobile accident was a fact question for the jury to determine); cf. City of Little Rock v. Cameron, 897 S.W.2d 562, 564 (Ark. 1995) ("[V]oluntary intoxication may be a factor to be considered by the trier of fact in determining negligence.").

Miles concedes that if the evidence supports an inference of intoxication then the odor of alcohol evidence is admissible under Arkansas law. (Appellant's Br. at 12.) At trial, the witnesses who were first at the accident scene and the investigating law enforcement officer testified that they could smell alcohol on Miles's breath. Miles testified that he had consumed at least a portion of two beers before the accident. He also testified that he saw two trucks pull into the intersection and that he did not swerve behind the GM truck to avoid the impact because he was afraid of colliding with a tree that he thought he saw near the intersection. The existence of the second truck and the tree was never substantiated, however. Moreover, prior to impact, Miles slowed his accelerating motorcycle by merely releasing the throttle and did not engage his brakes. Miles contends that the negative blood test performed at the hospital after receiving intravenous fluids and a partial blood transfusion illustrates that he was not intoxicated at the time of the accident, and thus the evidence was inadmissible. We are unpersuaded. Given the circumstances surrounding the accident, the jury was entitled to consider whether Miles's alcohol consumption contributed to the accident. Furthermore, Miles himself first raised the issue of alcohol consumption in voir dire, in his opening statement, and on direct examination of several witnesses in his case in chief.

5

Miles next asserts that GM's experts, Walter Zych, a mechanical engineer, and Dr. Charles Moffatt, an engineer specializing in biomechanics and accident reconstruction, were not qualified to testify as experts because Zych was not versed on the issue of hooking bumpers and Dr. Moffatt used faulty methodology in forming his opinion on injury causation. Miles contends that the district court should have disallowed their testimony because it was unreliable and did not fit the facts of this case. Admission of expert testimony is committed to the broad discretion of the trial court. See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1182 (8th Cir. 1997) (reviewing for an abuse of discretion).

Under Federal Rule of Evidence 702, "a witness qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if that testimony will "assist the trier of fact" in determining an issue in the case. "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998) (internal quotations omitted). The district court must ensure that the testimony admitted under Rule 702 is both relevant and reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). As evidence of Zych's infirmity as an expert, Miles points to Zych's deposition testimony when he refused to speculate as to the distance between the truck's bumper and the sheet metal after viewing several photographs taken of the truck after the accident and to Zych's unfamiliarity with the concept of hooking bumpers.

It is readily apparent that Zych was qualified as an expert engineer and was rightfully allowed to testify. Zych has designed and tested bumpers for production vehicles and has been involved with automobile design and testing for over 30 years. He also has testified as an expert witness for GM more than 200 times. GM offered Zych as an expert to explain why the gap between the bumper and sheet metal was necessary and to present his opinion that GM's bumper was safe. We see his proposed testimony as a highly useful tool for the jury to consider when determining fault. Moreover, Zych's testimony at trial comported with what was anticipated: Zych

testified about the general purpose of bumpers, how bumpers were tested, and the amount of clearance between the bumper and the truck's sheet metal based upon GM drawings. He also opined that the design of the truck and its bumper were safe, discussing both the lack of investigations by the National Highway Traffic Safety Administration and lack of lawsuits involving this particular GM truck and bumper.

Miles also contends that the district court should have excluded Dr. Moffatt's testimony because he used faulty methodology in forming his opinions about how Miles received his injuries and in reconstructing the accident scene. Miles asserts that Dr. Moffatt's opinions were unreliable because at the time of Dr. Moffatt's deposition he had not examined Miles, the x-rays taken of Miles's leg, the motorcycle, the truck, or the scene of the accident. Before rendering his opinions to the jury, however, Dr. Moffatt reconstructed the accident by reviewing the police report; photographs of the scene; Miles's medical records; Miles's radiology reports, which interpreted Miles's x-rays; witness statements and depositions; and medical literature. Simply because Dr. Moffatt did not conduct the reconstruction in the manner in which Miles found most suitable, does not render Dr. Moffatt's methodology fallible. It appears to us that Dr. Moffatt was able to glean the same--if not more useful--information through the methods he used.

We conclude that Miles's challenge to Zych's and Dr. Moffatt's knowledge and methodology goes to the weight that the jury accords the testimony rather than to its admissibility. See Sphere Drake Ins. PLC v. Trisko, 226 F.3d 951, 955 (8th Cir. 2000); Hose v. Chicago N.W. Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995). We conclude that Miles's criticism of the experts' testimony is the proper subject for a thorough cross-examination and not the basis for the absolute exclusion of their testimony. See Hose, 70 F.3d at 974.

## III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.