Cite as 2020 Ark. App. 251

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-19-192

| | |
|---|---|
| | Opinion Delivered April 22, 2020 |
| DEVLIN VEDIEL ASHBY AND SHELTER MUTUAL INSURANCE COMPANY | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION |
| APPELLANTS | [NO. 60CV-17-7363] |
| V. | |
| MARNETTE RAGON, INDIVIDUALLY AND AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF WILLIAM RAGON | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| | AFFIRMED |
| APPELLEE | |

## BRANDON J. HARRISON, Judge

This personal-injury case has a car wreck at its center. After a jury trial, Marnette Ragon and William Ragon[1] were awarded approximately $353,000 in damages for injuries caused by Devlin Ashby's negligence. The focus of Shelter Mutual Insurance Company's appeal is whether the circuit court should have granted Shelter's motion for a mistrial after the court allowed evidence that Ashby may have been intoxicated and then did not give the jury instructions dealing with the topic of intoxication. Finally, Shelter challenges the attorney's fee award in the Ragons' favor.

---

[1]William Ragon died on 20 February 2020. The circuit court appointed Marnette Ragon as the special administratrix of his estate on 15 April 2020. We have in turn substituted the parties pursuant to Ark. R. App. P.–Civ. 12(a) (2019).

We affirm the denial of Shelter's motion for a mistrial, the court's judgment on the jury's verdict, and the related fee award.

I.

In January 2016, the Ragons and Devlin Ashby were involved in a car wreck. According to the Ragons, they had stopped at a stop sign but were struck by Ashby's vehicle, on their car's right rear side, as they drove through the intersection after stopping. Ashby had just driven around a slower vehicle in the oncoming lane when he struck the Ragons' car. Ashby left the scene on foot. The passenger in Ashby's car stated that Ashby was intoxicated and speeding. Such were the material facts as alleged in the Ragons' complaint against Ashby. The complaint also named Shelter as a defendant. Shelter was the Ragons' insurance carrier at the time. The Ragons sued Shelter under their underinsured-motorist coverage and, if necessary, their uninsured-motorist coverage. The complaint sought damages for physical injury, mental anguish, past and future medical expenses, and punitive damages.[2]

The case went to trial, and a jury awarded $183,046.37 in damages to Marnette Ragon and $170,249.94 in damages to William Ragon. Facts related to the issues on appeal—the court should not have allowed the jury to hear intoxication evidence in the first place, and a mistrial should have been granted when the court did not properly instruct the jury at the trial's end—are discussed below as needed.

---

[2]In due course, the circuit court granted Shelter's motion for partial summary judgment on the claims for punitive damages and underinsured-motorist benefits. The court also severed the claims against Ashby for civil and punitive damages.

## A.

Did the circuit court abuse its discretion when it let an investigating police officer testify that Ashby showed some indicia of intoxication when he talked with Ashby at the accident scene? We address this question first.

Prior to trial, Shelter moved to prevent Officer Jeffrey Coburn from testifying that Ashby was intoxicated when the wreck occurred or was otherwise at fault. Officer Coburn responded to the accident and engaged personally with Ashby while investigating what happened. Shelter argued that there was "no reliable evidence that Ashby was intoxicated or impaired at the time of the accident," so any testimony to that effect should be excluded as being unduly prejudicial. Shelter contended that the officer's testimony should be limited to his factual observations.

The court held a hearing on the motion in limine, during which the Ragons' counsel said that Officer Coburn would testify that Ashby was "slurring his speech, that he smelled of intoxicants, he admitted he had been drinking earlier in the day, and that he had red eyes." Shelter objected to any evidence of alcohol use being allowed because it was more prejudicial than probative. The court said, "I think I'm going to let it in, but, but you need to talk to your officer as to not give an opinion."

At trial, Officer Coburn testified that he responded to a car accident on 2 January 2016. He said that a blue Mitsubishi Montero driven by Ashby was pulled onto the curb and that there were two other vehicles in the intersection of Mills Street and Lynch Drive in North Little Rock. When Officer Coburn arrived at the scene, Ashby was not there, but he was later found walking down Mills. Ashby said that he was "going to try and find

3

a phone to call 911." Officer Coburn said that Ashby had "red watery eyes, slurred speech, his balance was unsteady. He had an odor of intoxicants on his breath." Ashby initially denied being the driver of the Montero; but he later admitted to the officer that he was the driver. Ashby also admitted that he had been "drinking intoxicants earlier in that day."

Vicki Disabato, who lives close to the intersection where the accident occurred, testified that she had been on her front porch and witnessed the accident. She saw a vehicle, identified as the Ragons', at a stop sign and heard another car approaching the intersection at a speed "faster than thirty," which was the posted speed limit. That car, identified as Ashby's, drove around a car and hit the Ragons' car. Disabato saw Ashby climb out of the passenger side of his car, run to the corner, go back to the car to get something from the back seat, and run away again. She disagreed that the Ragons would have made it across the intersection regardless of Ashby's speeding vehicle. But she agreed that Ashby hit the Ragons.

Shelter moved for a directed verdict during the trial and argued, "[T]here's not any evidence in the record upon which the minds of the jurors could differ on all of the elements of proof." That motion, and its timely renewal, were denied. Shelter also moved for a mistrial about jury instructions related to intoxication. The jury decided the parties' dispute and, as we have already noted, returned a general verdict awarding damages to the Ragons.

After the circuit court entered a judgment on the verdict, Shelter moved for a new trial and again argued that any indicia of intoxication was improperly admitted as evidence. Shelter also stated that the Ragons had "submitted the testimony regarding Defendant Ashby's alleged alcohol consumption into evidence under an incorrect standard with the

4

intent of not pursuing the related jury instructions in order to prejudice the jury and inflame the jury award." The postjudgment motion was denied. Shelter appealed.

Now Shelter essentially challenges the denial of its motion in limine and the motion for new trial. Although Shelter alleged several bases for relief under Ark. R. Civ. P. 59 in its motion, here it focuses on Rule 59(a)(6), which provides for a new trial if the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law. Generally, we will not reverse a circuit court's refusal to grant a motion for new trial unless an abuse of discretion is shown. *Sharp Cty. v. Ne. Ark. Planning & Consulting Co.*, 269 Ark. 336, 602 S.W.2d 627 (1980). When evaluating the denial of a motion for new trial under Rule 59(a)(6), we will affirm if the circuit court's decision is supported by substantial evidence. *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 120 S.W.3d 61 (2003). Substantial evidence is that which can compel a conclusion one way or the other. *Dovers v. Stephenson Oil Co.*, 354 Ark. 695, 128 S.W.3d 805 (2003). A jury's verdict should not be disturbed unless there is no reasonable probability that the prevailing party's version of events could have occurred or when fair-minded persons can only draw a contrary conclusion to the verdict. *Id*.

Shelter argues that the Ragons' theory of the case was that Ashby acted negligently, and his negligence was due, in whole or in part, to his being intoxicated. Shelter is correct that the only evidence of intoxication was Officer Coburn's testimony. Shelter argues that the "mere fact" that a driver had been drinking alcoholic beverages is not, standing alone, enough evidence of negligence. *City of Little Rock v. Cameron*, 320 Ark. 444, 447, 897 S.W.2d 562, 564 (1995). More specifically, Shelter cites *Cameron* (more or less) for the

5

proposition that the Ragons did not establish Ashby's intoxication under Arkansas law; therefore, the jury should not have heard the legally insufficient testimony from Officer Coburn about the topic.

In *Cameron*, a negligence case, the driver of a vehicle that hit a traffic pole had been drinking. An officer testified that she smelled alcohol on his breath; another officer testified that the driver's blood–alcohol level was .05 percent according to a portable breathalyzer test. After a directed verdict was granted in the driver's favor, the city appealed. The supreme court affirmed the verdict.

> The mere fact that Cameron had been drinking alcoholic beverages is not sufficient evidence of negligence, standing alone, for this claim, to withstand a directed verdict. Cameron was not legally intoxicated based on his percentage of blood/alcohol content. But even had he been intoxicated, a distinguished treatise on torts concludes that the fact of intoxication is not negligence *in itself*, but it must be shown to have caused the actor's behavior to have deviated from that of a reasonable person and to have caused the plaintiff's injuries. In this vein, we have stated that voluntary intoxication may be a factor to be considered by the trier of fact in determining negligence.

*Id*. at 447, 897 S.W.2d at 564 (internal citations omitted) (emphasis original).

Also, in *Wade v. Grace*, 321 Ark. 482, 902 S.W.2d 785 (1995), the supreme court affirmed the exclusion of evidence that beer cans were floating in the water after a ski boat collided with a party barge—absent some evidence that the driver of the ski boat was intoxicated. The supreme court affirmed the circuit court's decision to exclude the intoxication evidence because the evidence would have been unduly prejudicial. In *Baker v. Trevathan*, 2018 Ark. App. 135, 542 S.W.3d 231, a car-accident case, this court held that there was no evidence of Baker's intoxication or impairment at the time of the accident or immediately afterward, so any evidence regarding her prescription medication was irrelevant

and should have been excluded. But because Baker was not found to have been at fault, she could not show any prejudice from the admission of the evidence.

Moving from the caselaw to the testimony, Shelter notes that Officer Coburn testified as a lay witness, and thus his testimony in the form of opinions or inferences was limited to those opinions or inferences that were rationally based on his perception and helpful to a clear understanding of his testimony or a determination of a fact in issue. *See* Ark. R. Evid. 701 (2019). Shelter also cites Disabato's opinion that "everyone" drives fast on the road where the accident occurred and infers that because everyone goes fast, "Ashby's alleged intoxication or consumption of alcohol is not indicative that he was negligent or behaved out of character for those that travel that area."[3] And it contends there was no evidence that Ashby's alleged intoxication showed a lack of reasonable care or caused the accident; thus, any consumption of alcohol by Ashby failed to give rise to an inference of negligence. Shelter says that it was negatively impacted by the admission of Officer Coburn's testimony, as evidenced by the jury's awarding the Ragons "nearly $100,000.00 each over their respective medical expenses."[4]

The Ragons counter that Shelter mistakenly presses an "actual intoxication" legal standard before any indicia of driving under the influence can be admitted into evidence. Contrary to Shelter's all-or-nothing approach, the Ragons urge that Officer Coburn's

---

[3]Disabato's exact words were: "I had just walked out, and I sit down. And, I don't know, it was a couple of minutes went by, and I heard a sound, and I said to myself I said, oh, they drive so fast on this road."

[4]It seems that the jury was given a packet that included a summary of medical expenses that the Ragons incurred. That information is not in the record, so we cannot verify the amount of medical expenses claimed.

detailed testimony is prima facie evidence of potential intoxication, which the jury can receive and weigh in its deliberations. As for the caselaw, the Ragons point out that Arkansas cases have repeatedly allowed lay witnesses to describe actions and conditions consistent with intoxication. For example, in *Lockhart v. State*, 2017 Ark. 13, at 4, 508 S.W.3d 869, 872, our supreme court affirmed a DWI conviction and noted that "the observations of police officers regarding the smell of alcohol constitutes competent evidence on the issue of intoxication. Further, opinion testimony regarding intoxication is admissible." (Internal citations omitted.) *See also Peterson v. State*, 81 Ark. App. 226, 100 S.W.3d 66 (2003) (same); *Wortham v. State*, 65 Ark. App. 81, 985 S.W.2d 329 (1999) (noting that police officers' observations may be competent evidence supporting a DWI charge).

The Ragons also distinguish the cases relied on by Shelter. In *Wade*, the investigating officers did not observe any behavior at the boating-accident scene that led them to believe the driver was intoxicated; the mere fact that beer cans were found floating nearby in the lake was deemed more prejudicial than probative. And in *Cameron*, the investigating officers did not observe any behavior to support a finding of intoxication. In fact, a breathalyzer test administered at the scene showed that the driver was not legally intoxicated.

This case is different. Here, Officer Coburn testified that Ashby had slurred speech; red, watery eyes; poor balance; and he smelled of alcohol. That testimony is sufficient under our caselaw to establish a prima facie case of intoxication, which the jury was permitted to hear and consider.

Shelter's main error here is that it presses the wrong test for determining whether intoxication evidence may be admitted. Specifically, Shelter argues the following:

8

> In order for Officer Coburn's testimony that Mr. Ashby had an odor of alcohol on his person, red watery eyes, slurred speech and an unsteady balance to be admissible it must be clear that not only was Mr. Ashby actually intoxicated at the time of the accident but that alleged intoxication resulted in him striking the Appellees as they pulled from the stop sign into his path of unrestricted travel.

We disagree with Shelter's view of the law. Notice what this (mis)statement of the law does besides assert an "actual intoxication" standard, which does not now exist in the caselaw. Shelter's position melds the issue of intoxication with a proximate-cause point. A witness who testifies about indicia of intoxication in a way that establishes a prima facie case on the point does not have to also state that it proximately caused some act or omission that resulted in damages. It would be improper for a witness to opine on a jury question in this manner.

We hold that Officer Coburn's observations established a prima facie[5] case of intoxication, so his testimony was admissible under Arkansas law. A jury was not, of course, required to conclude that Ashby was intoxicated or that, even if he was, his intoxication contributed to any negligent act or omission on his part while driving his car. As we have already stated, the jury's verdict will only be set aside under Rule 59(6) when there is no reasonable probability that the car wreck happened in a manner consistent with the Ragons' version of events. *See Dovers*, *supra*. That is not the case here. Consequently, we affirm the denial of Shelter's motion for new trial.

---

[5]Prima facie evidence is "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it may later be proved to be untrue." *Prima Facie*, *Black's Law Dictionary* (11th ed. 2019).

B.

The second and more important facet of the "intoxication evidence" question relates to the jury-instructions phase of the case. It is on this point that our dissenting colleagues part ways with us. Specifically, the Ragons' counsel offered AMI Civ. 606[6] and 607,[7] which are intoxication instructions. Shelter objected to them,[8] and the Ragons' counsel voluntarily withdrew them. The court did not rule on whether the instructions should be given. Shelter's counsel then moved for a mistrial, arguing that "they've tainted the barrel." The court denied the mistrial motion, stating that "the officer just testified to what he observed."

---

[6]AMI 606 Intoxication—Definition

A person is intoxicated when *[he][she]* is influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or combination thereof, to such a degree that *[his][her]* reactions, motor skills, and judgment are substantially altered and, as a result, *[he][she]* constitutes a clear and substantial danger of physical injury or death to *[himself][herself]* and others.

AMI Civ. 606 (2020).

[7]AMI 607 Intoxication as Negligence

Whether a person involved in the occurrence was intoxicated at the time is a proper question for you to consider together with other facts and circumstances in evidence in determining whether *[he][she]* was negligent. Intoxication is no excuse for failure to act as a reasonably careful person would act. An intoxicated person is held to the same standard of care as a sober person.

AMI Civ. 607 (2020).

[8]Shelter does not dispute that it objected to the instructions. Shelter's counsel on appeal, who was also its trial counsel, confirmed during the oral argument that he had objected to the Ragons' instructions.

10

Now, Shelter complains that the failure to give the two intoxication instructions to which it objected tainted the jury deliberations and the verdict because intoxication evidence was received at trial, but the jury was not told what to do with it. The Ragons say that they withdrew the instruction because Shelter had objected to it; and Shelter cannot invite an alleged error then complain about it later. *See Park Plaza Mall CMBS, LLC v. Powell*, 2018 Ark. App. 48, at 4 (a party may not complain on appeal of an erroneous action of a circuit court if it induced or acquiesced in that action).

We agree that Shelter invited the perceived error about which it now complains. The instructions were withdrawn because Shelter objected to them. When the parties had their instructions conference, the court had already admitted intoxication evidence over Shelter's multiple objections. At that time, regardless of how an appellate court might decide the admission question if appealed, Shelter had clearly preserved the argument that the circuit court should not have admitted the officer's intoxication testimony during the trial in the first place. The problem arose when Shelter did not fully appreciate that the jury-instructions phase is separate from the evidentiary-error question that occurred when the parties made their respective cases to the jury. We therefore disagree with Shelter's main concern that it would have waived its in limine and trial objections challenging the admission of the intoxication evidence in the first place had it not objected to the Ragons' offering AMI Civ. 606 and 607.

A court must generally give an instruction if a party offers it, the instruction correctly states the law, and there is "some evidence" to support the instruction. *See Parker v. Holder*, 315 Ark. 307, 867 S.W.2d 436 (1993) (holding that it is error to exclude a requested

instruction that correctly states the law and there is evidence that supports its use). All those boxes were checked when Shelter objected to the instructions at the conference. Without question there was "some evidence" of intoxication by way of the officer's testimony. Shelter could not and did not argue the contrary; it just argued for an "actually intoxicated" standard and for the court to exclude evidence of it.

In our view, Shelter should have recognized that the Ragons offered AMI instructions that correctly stated the law and that there was "some evidence" to support the instructions—albeit over Shelter's well-preserved prior objections that no intoxication evidence should have come in at all. Then, during its closing argument, Shelter could have told the jury, for example, that the Ragons' own evidence of intoxication (Officer Coburn's testimony) did not meet the standard in AMI Civ. 606 and should otherwise be rejected. AMI Civ. 606 imposes a rather stringent definition of intoxication, and Shelter could have (and should have) highlighted that standard and argued that the officer never came close to stating the things included in the jury instruction.

In other words, had Shelter wanted to require the Ragons to satisfy the legal burden for establishing intoxication, as the term is defined in the relevant jury instructions, then it should not have sought to keep the instructions out. In its reply brief, Shelter says that it could not "consent to the admission of a jury instruction presented when it has objected to the evidence which is the basis for the instruction." But it provides no citation to authority for this statement; nor have we found any caselaw holding that failing to object to a jury instruction in this case's context can waive a sufficiency-of-the-evidence argument on appeal. It is congruent for Shelter to have challenged the admissibility of the intoxication

12

evidence in the first place, and then once it was before the jury, argue to the jury that it should assess the proof in light of the instructions (AMI Civ. 606 and 607) and find that Ashby was not intoxicated when the wreck occurred and/or that intoxication was not a proximate cause of any alleged negligent act or omission.

An additional problem with Shelter's instruction argument is that this case, with both parties' and the court's consent, was submitted on a general verdict form. The general verdict means that no party asked the jury to parse out, through interrogatories, exactly which act(s) or omission(s) of alleged negligence proximately caused the Ragons' damages. There was no attempt to ask the jury whether it believed alcohol played a part in the verdict. This is important because there was evidence, apart from potential intoxication, that could have alone supported a negligence verdict. Intoxication evidence was the highlight of the case no doubt. But the case still would have gone to the jury without it. Stated differently, a sober person using questionable judgment could be charged with the same negligent acts or omissions. Intoxication is not a necessary finding before one can violate the rules of the road in a negligent manner. No one will ever know without speculating what role, if any, intoxication as opposed to speeding, for example, played in the jury's determination. Shelter wants "intoxication" to be the driving factor in the adverse verdict, the end-all; but there is no way to know that it was, and we do not guess at general verdicts' rationales.

## II.

The Ragons moved for attorney's fees pursuant to Ark. Code Ann. § 23-79-208(a)(1) (Repl. 2014), which provides that in all cases in which loss occurs and the liable insurance company fails to pay the losses within the time specified in the policy after demand is made,

"the person, firm, corporation, or association shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." Counsel asked for $134,400, which constitutes its portion of the amount awarded under its contingency contract, or alternatively, for at least $13,830 based on its hourly rate and time spent on the case. Shelter objected to the amounts as excessive and unreasonable. In its order, the circuit court found that the hourly rate ($250 per hour) and the time spent on the case (56.3 hours) asserted by the Ragons' counsel was reasonable and awarded attorney's fees in the amount of $13,830.

The decision to award attorney's fees and the amount to award is discretionary and will be reversed only if the appellant can demonstrate that the circuit court abused its discretion. *Harrill & Sutter, P.L.L.C. v. Kosin*, 2012 Ark. 385, 424 S.W.3d 272. Shelter argues that the attorney's-fee award is excessive and "without justification." Shelter primarily asserts that counsel's statement supporting the award "includes entries of time in a case that Appellees were ultimately forced to nonsuit due to their own failure to be ready for the trial, and it contains duplicate entries for the same tasks performed in the subsequent filing." But Shelter fails to pinpoint what entries it is referring to or provide any page cites to the record or addendum. Shelter also contends that counsel should be held to the rate determined to be reasonable ($200 per hour) in *McCollum v. Shelter Mutual Insurance Company*, 2013 WL 1498995, a 2013 unreported case in the United States District Court for the Western District of Arkansas.

14

Because Shelter has not shown that the circuit court abused its discretion when it awarded the amount of fees that it did, the attorney's fee award of $13,830 is affirmed.

III.

The circuit court properly admitted the intoxication evidence, and Shelter invited the jury-instruction error about which it now complains. To hold otherwise means that AMI Civ. 606 and 607 *must* be given when intoxication evidence is admitted during a trial. But no case in Arkansas so holds. Moreover, as a practical matter, Shelter maintained throughout the trial that Ashby did not act negligently, for any reason and in any way. The jury simply found that Ashby operated his car in a negligent manner and that his negligence proximately caused the Ragons' damages. Given the general verdict and the instructions that were given, we cannot know which act or omission the jury based its decision on.

The record amply supports the jury's verdict and the attorney's-fee award. The circuit court's judgment on the jury verdict and the related fee award are therefore affirmed.

Affirmed.

GRUBER, C.J., and ABRAMSON, VIRDEN, KLAPPENBACH, and SWITZER, JJ., agree.

GLADWIN, VAUGHT, and BROWN, JJ., dissent.

**LARRY D. VAUGHT, Judge, dissenting**. I respectfully dissent from my colleagues and would reverse the circuit court's denial of Shelter's motion for a mistrial or new trial because it was reversible error for the court to admit extremely prejudicial evidence and then allow the case to go to the jury without any legal guidance for how it should evaluate that evidence.

15

In *City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995), the Arkansas Supreme Court held that "the mere fact that Cameron had been drinking alcoholic beverages is not sufficient evidence of negligence, standing alone," and it noted that although there was evidence that Cameron had been drinking, there was "no evidence that Cameron was intoxicated or otherwise impaired at the time of the accident or that his liquor consumption" contributed to the wreck. In *Wade v. Grace*, 321 Ark. 482, 902 S.W.2d 785 (1995), the Arkansas Supreme Court affirmed the circuit court's decision to exclude evidence of alcohol consumption—including the presence of beer cans in the water around the scene of a boating accident, testimony that the driver of the boat had consumed one beer, and an officer's testimony that he smelled alcohol on the driver—on the basis of Rule 403 of the Arkansas Rules of Evidence. The court reasoned that the officer who would have testified to this evidence could not say that the driver had been under the influence of alcohol at the time of the accident. The supreme court affirmed the exclusion of the evidence as unduly prejudicial, quoting the circuit court to explain that "we have jurors that when they hear the word beer cans, it's all over for either side." *Wade*, 321 Ark. at 488, 902 S.W.2d at 789.

Here, rather than ruling on the admissibility of the plaintiffs' evidence, the circuit court acknowledged that such evidence might not be admissible under Rule 403 unless it rises to the level of intoxication but then asked the plaintiffs if they wanted to "take the risk" of introducing it anyway. They did, and the jury was allowed to hear highly prejudicial evidence of intoxication very much akin to the beer cans in *Wade*. I agree with the majority's conclusion that the mere introduction of this evidence was not reversible error pursuant to

16

*Balentine v. Sparkman*, 327 Ark. 180, 937 S.W.2d 647 (1997). The problem here is that the jury in this case was not instructed on the legal standards governing how it should evaluate evidence of intoxication. I would reverse the court's denial of Shelter's motion for a mistrial or new trial because even if the evidence was admissible, it should not have been used to confuse and manipulate the jury.

The Ragons take the position that Shelter is barred from prevailing on the denial of its motion for a mistrial or new trial because it originally objected to the jury instructions on intoxication. The majority agrees and has affirmed on a theory of "invited error," concluding that Shelter got what it wanted when the Ragons withdrew their intoxication instruction and that it cannot subsequently use the withdrawal of that instruction as the basis for seeking a mistrial.

I disagree. Such an outcome is clearly unjust. Shelter's objections to the intoxication instructions were a continuation of its ongoing and consistent position throughout this case that there was insufficient evidence to establish intoxication. It is common practice for a party to object to a jury instruction for which it claims there is insufficient evidentiary support. *See, e.g.*, *Neal v. J.B. Hunt Transp., Inc.,* 305 Ark. 97, 805 S.W.2d 643 (1991); *Tran v. Vo*, 2017 Ark. App. 618, 535 S.W.3d 295. Objecting to the instructions was not error; Shelter was positioning itself for a mistrial because the Ragons had chosen to "take the risk" of introducing the highly prejudicial evidence and had then failed to prove intoxication, as evidenced by their quick agreement to withdraw the intoxication instructions upon Shelter's objection. A mistrial was Shelter's only remaining remedy. Had it not objected to the instructions it would have acquiesced to the Ragons' contention that alcohol consumption

17

was a relevant issue in the case. Shelter was legally entitled to challenge the evidentiary basis for any of the Ragons' proposed jury instructions, and when it was successful in doing so, it was then entitled to move for a mistrial.

In my opinion, the circuit court set this case on a path toward either mistrial or appellate reversal when it essentially allowed the Ragons to gamble on the admissibility of Rule 403 evidence by offering them the option to "take the risk" of presenting prejudicial material to the jury. The court then failed to follow through on its analysis under Rule 403 when Shelter played its final hand by moving for a mistrial. And today, it looks like the Ragons hit the jackpot with the majority's decision to affirm. They were able to introduce inflammatory evidence without having to first prove its admissibility under Rule 403, send the case to the jury without the burden of any relevant instructions as to that evidence, and then prevail on appeal on the basis of an invited-error theory that penalizes Shelter for making routine, valid, and timely objections throughout the case. I would reverse.

GLADWIN and BROWN, JJ., join.

*Matthew, Sanders & Sayes*, by: *Mel Sayes*, for separate appellant Shelter Mutual Insurance Company.

*Brad Hendricks Law Firm*, by: *Christopher R. Heil*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee.